O’NIELL, J.
On the 20th of May, 1913, the defendant company issued a policy of insurance to N. G. Stinson for 81,350 on his residence in Shreveport. Attached to the policy was a rider or loss payable clause in favor of the plaintiff, mortgagee, as follows, viz.;
“It is agreed that any loss or damage ascertained and proven to be due the assured under this policy shall be held payable to Dr. R. D. Tilley, as interest may appear, subject, however, to all the terms and -conditions of this policy.”
The policy was delivered to the mortgagee, Dr. R. D. Tilley, at the time it issued, and remained in his possession until he filed this suit.
The building insured was totally destroyed by fire, from an unknown cause, about the 1st of January, 1914. The insurance adjuster to whom the adjustment of the loss was submitted by the insurance company had an appraisement made of the cash value of the building destroyed, prepared the proof of loss on a blank furnished by the insurance company, and sent it to Dr. Tilley, with instructions to forward it to Stinson, who resided in Arkansas. Without examining or paying particular attention to the document, Dr. Tilley forwarded it to Stinson, with the letter from the adjuster.
It appears that, in preparing the proof of loss, the adjuster subtracted 5 per cent, from the original cost or value of the building, and put down the remainder, in the column under the printed heading, “Cash Value,” $1,412.61. He put the same figures, showing a total loss, under the column headed “Whole *988 Loss,” $1,412.61. He put the amount of the policy in the column intended to show the total amount of all concurrent insurance, under the printed heading, “Whole Insurance,” $1,350; and, there being no other insurance on the property, he put the same figures in the next column, under the printed heading “Amount Named in this Policy,” $1,350. In the next and last column, intended for the figures showing the amount due under each policy, under the three-quarter value clause, or where the amount due is, for any reason, less than the face of the policy, the adjuster put down three-fourths of the cash value of the property, under the printed heading, “Amount Claimed under this Policy,” $1,059.46.
Stinson, not knowing that, under Act No. 135 of 1900 and Act No. 187 of 1908, he was entitled to the full amount of the insurance on the property totally destroyed, did not complain of the adjuster’s having invoked the three-quarter value clause, but accepted the figures as correct, except that he thought he was entitled to a return of the unearned premium amounting to $7.84. Accordingly the proof of loss was returned to the adjuster, with the request that the amount of the unearned premium be added. It appears that, in the meantime, on account of his absence from the state and as a matter of convenience, Stinson gave a power of attorney to Dr. Tilley to effect a settlement with the insurance company. The adjuster prepared another proof of loss corresponding with the one returned to him by Stinson, except that, by adding the amount of the unearned premium, $7.84, the amount in the column headed “Amount Claimed under this Policy” was written $1,067.30. The document was then sent by the adjuster to Dr. Tilley, who, without examining or paying particular attention to it, forwarded it to Stinson, who signed it and returned it to the adjuster. On receipt of the proof of loss signed by Stinson, the insurance company sent to their local agent a check made payable to- N. G. Stinson and R. D. Tilley jointly, for $1,067.30. In the meantime, Dr. Tilley had learned that the adjuster had, without any right, deducted one-fourth of the cash value of the property from the face of the policy; and he so informed Stinson, who appears to have known that the deduction was made, but did not know that the law had abrogated the three-quarter value clause in cases of total destruction of a building. Therefore, when the local agent notified Dr. Tilley that he had a check for $1,067.30, Dr. Tilley declined to accept it, and insisted on the company’s paying the full amount of the insurance, $1,350. The matter was referred by the agent to the adjuster, who corresponded with Dr. Tilley in an effort to effect a settlement.' As a compromise, Dr. Tilley proposed to the adjuster that he might persuade Stinson to consent to a deduction of $74.24, that is, 5 per cent, of the original cost or value of the building, if the company would settle on that basis; but the proposition was ignored by the adjuster. Dr. Tilley and Stinson then submitted the matter to their attorney, with instructions to collect the full amount of the policy. In response to the attorney’s demand for payment, the adjuster wrote that he considered the matter closed by Stinson’s having signed the proof of loss for $1,067.30, in full settlement, and said that, if the attorney desired to institute a suit, it would only be necessary for the company to file the proof of loss in court to defeat the action. He suggested that the attorney had dictated his letter in haste and without looking into the law on the subject, and that, after a review of the same, he, the attorney, would concede that a suit on the policy would only result in incurring costs for his clients. Thereafter the adjuster proposed to pay the attorney of^gtinson and Dr. Tilley a fee of $75, which the attorney promptly refused.
*990 The attorney then wrote the adjuster, requesting that the company pay the. amount which the adjuster had admitted to he due, $1,067.30, with reservation of the right of Dr. Tilley and Stinson to sue for the difference between^ the amount paid and the amount of the policy, in accordance with a provision in section 3 of act No. 168 of 1908. The company declined to pay the amount admitted by the adjuster to be due under the policy, unless it should be accepted by Dr. Tilley and Stinson in full and final settlement of all claims under the policy. The attorney then replied that, unless he received payment for the full amount of the policy, he would file suit on the 25th of May, 1914.
This suit was filed on the 25th of May, 1914, more than 60 days after Stinson had signed and returned the proof of loss. On the day after the suit was filed, the insurance adjuster wrote to the plaintiff’s attorney, informing him that the state agents had received instructions from the home office to issue a draft for the face of the policy, rather than contest the claim, and that the draft would be forwarded to the local agent for $1,350 as soon as it could be put through the home office. The attorney replied that the offer was made too late; that he had given due notice of the exact date on which the suit would be filed unless the amount demanded was paid, and had taken it for granted that the adjuster would not recede from his decision to insist upon enforcement of the three-quarter value clause. The attorney, therefore, demanded, in addition to the amount of the policy, 12 per cent, statutory damages and what he considered a reasonable attorney’s fee, in accordance with the provisions of section 3 of Act No. 168 of 1908. Although he had demanded a fee of $250 in the suit, he consented to accept a fee of $100 if the company would pay the full amount of the policy and 12 per cent, statutory damages. The letter from the adjuster, offering to pay the full amount of the policy, was offered in evidence by the defendant’s attorney for the sole purpose of showing that the company had not been arbitrary, and as a defense to the demand for damages and attorney’s fees, in the event that the court should render judgment for the amount of the policy. Plaintiff’s counsel objected to the introduction of the letter on the ground that it was written after the suit was filed. The objection was sustained, but the letter was filed as a part of the bill of exception reserved by the defendant. Our opinion is that the objection referred more to the effect than to the admissibility of the evidence.
The evidence adduced on the trial of the case showed that, although the amount of the mortgage note held by the plaintiff, on its face, largely exceeded the amount of the policy, it had been reduced by partial payments; and, allowing credit for unearned interest, the debt secured by the mortgage was slightly in excess of $1,330 at the time of the fire. With accrued interest, however, it exceeded the amount of the policy when the suit was filed.
Judgment was rendered in the district court in favor of the plaintiff for the amount of the policy, $1,350, with interest at 5 peícent. from judicial demand, and for $162 as statutory damages at 12 per cent, on the amount of the policy, and for $150 attorney’s fees.
On the defendant’s appeal, the Court of Appeal amended the judgment by reducing the amount to $1,067.30, and rejecting the statutory damages and attorney’s fee. The case is before us on a writ of review issued at the instance of the plaintiff.
We quote from the opinion of the Court of Appeal as follows:
“Since the act 135 of 1900, known as the valued policy law, the value of the property as assessed by the insurer, or as by him permitted to be assessed, at the time of the issuance of a policy of fire insurance, on the character of property here involved, is conclusively taken to *992 be the true value of tbe property, both at tbe time of issuing tbe policy and at tbe time of its damage or destruction; and tbe full amount of the insurance issued upon said property, when it is destroyed, is the measure of tbe company’s liability to tbe assured.
“This being true, no deduction therefrom on account of depreciation in tbe value of tbe property since tbe issuance of tbe policy, and no deduction on account of the three-quarter value clause, can be claimed by the insurance company. Any stipulation to that effect contained in tbe policy is to be treated as null and void and of no effect.
“Therefore, when tbe bouse in question was destroyed by fire the defendant company owed the assured tbe total sum stated in tbe policy, unless said policy bad been voided by some act of tbe assured, which is not pretended to be the case here.”
Tbe Court of Appeal held that tbe plaintiff bad no right of action on tbe policy of insurance without first suing to set aside tbe compromise agreement of Stinson to accept $1,067.30, and that that agreement to compromise could not be set aside in tbe present suit, to which Stinson was not a party, and in which tbe plaintiff did not charge fraud.
Tbe defendant had filed an exception of nonjoinder, contending that Stinson was a necessary party to this suit, and tbe defendant’s answer was filed with reservation of tbe exception. In effect, tbe Court of Appeal held that tbe exception should have been maintained.
[1,2] Tbe doctrine contended for by the defendant, and sustained by tbe Court of Appeal, that the so-called compromise agreement of Stinson is binding upon Dr. Tilley unless and until it be set aside in a direct action can have no application to this case, because the so-called proof of loss shows on its face that the amount ascertained to be due the assured under the policy was the full amount of the policy, $1,350, notwithstanding the amount claimed under the policy by Stinson was only $1,067.30. The proof of loss showed upon its face every fact necessary to prove that the amount of loss ascertained to be due' the assured was $1,350 under the provisions of Act No. 135 of 1900 and Act No. 187 of 1908. It showed that the property insured was a building; that it was totally destroyed by fire, originating from a cause unknown; that the value of the property, as assessed by the insurer or permitted by him to be assessed at the time of the issuance of the policy, exceeded the amount of the policy. Under such conditions, Act No. 135 of 1900 and Act No. 187 of 1908 fixed tha amount due the assured under the policy at $1,350; and any stipulation or provision to the effect that the assured was a coinsurer, or that any reduction should be made on account of the value of the property, would have been absolutely void and of no effect. Under the terms of the rider or loss payable clause, Dr. R. D. Tilley was entitled to receive “any loss or damage ascertained and proven to be due the assured under this policy.” Hence it was not necessary for Dr. Tilley to sue to set aside the proof of loss made by the company’s adjuster and signed by the assured, showing the amount ascertained and proven to be due the assured under the policy to be $1,350, before suing for that amount under the stipulation in his favor.
The Court of Appeal rested its judgment largely upon the proposition that the loss payable clause in favor of Dr. Tilley did not make him a party to the contract, and that therefore he was not a necessary party to the adjustment and ascertainment of the amount due under the policy. It is suggested that he would be a necessary party to the adjustment if he had taken out the insurance upon his interest as a mortgage creditor. And it is suggested that, if Stinson had been examined under oath, after the fire, in an investigation of its origin, and had sworn falsely, it would have destroyed whatever right Dr. Tilley might have had to recover on the policy, because the loss payable clause in favor of Dr. Tilley is subject to all the terms and conditions of the policy. The answer to that prop *994 osition is that it was conceded that the assured did not do anything to annul the policy or forfeit the amount ascertained and proven to be due and payable to Dr. Tilley as his interest might appear. What the assured did, through ignorance of the law, was to consent to accept less than the amount ascertained and proven to be due him under the policy, and payable to Dr. Tilley as his interest might appear; and the only question presented is whether the assured could bind Dr. Tilley by that agreement. The decision in Monroe B. & L. Association v. L. & L. & G. Insurance Co., 50 La. Ann. 1243, 24 South. 238, holding that the relation between the insurer and the insured was not changed or affected by the loss payable clause in favor of the mortgagee, and that by violating the contract of insurance the assured had vitiated the policy, has no application to the facts of this case.
It is contended by the defendant’s counsel that under the precise language of Act No. 168 of 1908 the amount ascertained to be due the assured must be paid to him within 60 days from the receipt of the proof of loss offered by the assured, and that the mortgagee has no right of action, under the loss payable clause, to demand that payment be made to him, except as the agent and on behalf of the assured. To maintain that doctrine would destroy the loss payable clause, or stipulation pour autrui, and leave the mortgagee depending upon the good faith or generosity of the assured. It would be contrary to articles 1890 and 1902 of the Civil Code, which provide that a stipulation in a contract, for the advantage or benefit of a third person, cannot be revoked by the parties to the contract without his consent. It would be contrary to the doctrine stated in Sargent v. Daunoy, 14 La. Ann. 44, that neither of the parties to a contract can change their obligations to a third party, growing out of the contract, by subsequently altering or prolonging its execution as between themselves. See, also, Dumont v. Roman Catholic Church of Ascension, 6 Rob. 534; Levistones v. Landreaux, 6 La. Ann. 26; Succession of Tabary, 31 La. Ann. 415; De L’Isle v. Succession of Moss, 34 La. Ann. 169. In the case of Mrs. Pilcher v. New York Life Insurance Co., 33 La. Ann. 322, it was held that a policy of insurance on the life of the husband in favor of his wife vested the latter with a right which the husband could not destroy or control without her consent, and that the insurer, having, at the request of the husband and without the consent or knowledge of the wife, substituted for the policy in her'favor one in favor of the husband, remained liable to her for the amount of the original policy, less the amount of premiums paid on the substituted policy; That decision was cited with approval in Putnam v. New York Life Insurance Co., 42 La. Ann. 742, 7 South. 602; Stuart v. Sutcliffe, 46 La. Ann. 248, 14 South. 912; Bransford v. Bransford, 46 La. Ann. 1222, 15 South. 678; Tutorship of Crane, 47 La. Ann. 901, 17 South. 431; Lambert v. Penn Mutual Life Insurance Co., 50 La. Ann. 1034, 24 South. 16; Succession of Emonot, 109 La. 365, 33 South. 368. See, also, Succession of Desforges, 135 La. 59, 64 South. 978, 52 L. R. A. (N. S.) 689.
The defendant’s counsel rely upon the doctrine announced by the Supreme Court of Ohio in Erie Brewing Co. v. Ohio Farmers’ Insurance Co., 81 Ohio St. 1, 89 N. E. 1065 reported in 25 L. R. A. (N. S.) 740, 135 Am. St. Rep. 735, 18 Ann. Cas. 265, to the effect that a loss payable clause attached to a fire insurance policy does not create any contract relation between the insurance company and the mortgagee to whom the loss is made payable, or give the mortgagee a right to participate in the adjustment or arbitration proceedings to fix the amount of the loss, and that therefore the mortgagee is bound by an *996 award agreed to by tbe assured, although, the mortgagee had no opportunity to be heard. The decision was criticized rather severely by the author of the report, citing numerous decisions supporting his criticism, 25 L. R. A. (N. S.) on page 741 of the report. We observe that, in the Ohio ease cited, an adjustment was necessary, because the property insured was not totally destroyed; nor does it appear from the decision that there was a statute in Ohio corresponding with our Acts No. 135 of 1900 and 187 of 1908, doing away with an adjustment in case of the total destruction of a building. Be that as it may, under the provisions of the Civil Code and the jurisprudence of this state, we cannot adopt the doctrine that the assured may, after the destruction of his building by fire, renounce for the mortgagee the latter’s right to collect the amount of the loss ascertained to be due the assured, without the consent of the mortgagee.
[3] Under the terms of section 3 of Act No. 168 of 1908, the defendant company is. liable for the payment of 12 per cent, of the amount of the loss due the plaintiff and for a reasonable attorney’s fee. There was no justification whatever for the company’s withholding payment of the amount which its adjuster had admitted to be due under the policy. Section 3 of Act No. 168 of 1908 provides that, if the insurance company pays within 60 days the amount which its adjuster or agent admits to be due, the insured shall only recover the difference between the amount paid and the amount judicially ascertained to be due, together with 12 per cent, damages on such difference and a reasonable attorney’s fee. In the case of Hart v. Springfield Fire & Marine Insurance Co., 136 La. Ann. 125, 66 South. 558, it was said that that provision of the law is advantageous to the insured, as well as to the insurer, in that the assured may accept the payment and reserve his right of action for any additional amount that may be actually due him under the policy. The defendant’s arbitrary refusal to pay the amount which its adjuster admitted to be due renders the defendant liable to the penalty stipulated in the statute.
For the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the district court is reinstated and affirmed and made the final judgment of this court; the defendant to pay all costs.