On October 19, 1943, Guy W. Allen purchased from Burton 
Watson, automobile dealers in the City of Baton Rouge, a 1941 Ford Super Deluxe Convertible Coupe for the price and consideration of $1530, on which there was paid the sum of $675. For the balance thereof, that is, the sum of $855, the said Allen executed his certain promissory note, dated of even date, payable at the office of Baton Rouge Securities Co., Inc., of Baton Rouge, to his own order and by himself endorsed, and falling due and payable in 15 installments of $57 each, the first installment being due and payable on November 19, 1943, and the remaining installments due on the 19th day of each succeeding month, until all were paid in full, with interest at the rate of 8% per annum from maturity of each installment until paid, with provision for attorney's fee at 15% upon the total amount due.
The vendor reserved his vendor's lien and Allen granted a chattel mortgage to secure the said note, in principal, interest and attorney's fee. In the act of chattel mortgage there is a provision wherein the automobile was to be insured against fire and theft, or any physical damage to the car to protect Allen, the purchaser, Burton Watson, the vendor, and vendor's assignee. The Act of mortgage further provided that "the proceeds of any insurance, whether paid by reason of loss, injury, return of premium or other, shall be applied towards the replacement of the property or payment of this obligation, at the option of the vendor, or future holder of said note" (our italicizing). The act of mortgage also contains the usual acceleration clause whereby the nonpayment of any installment of said note be not paid at maturity shall cause the said note to be immediately due and payable in its entirety. The Act of chattel mortgage was filed and recorded on *Page 579 
November 4, 1943, in the Chattel Mortgage records for the Parish of East Baton Rouge.
On October 19, 1943, the New England Fire Insurance Company of Pittsfield, Mass., issued a policy covering the said automobile, and insuring it against risks, amongst which was "collision or Upset," for actual cash value in excess of $50 (deductible). The loss, if any, under the policy, was payable, as interest may appear, to insured (Allen) and Baton Rouge Securities Co., Inc., of Baton Rouge, La. The note and the insurance policy, together with a copy of the chattel mortgage, were held by the Baton Rouge Securities Co., Inc.
On November 15, 1943, the car was wrecked. On December 3, 1943, Allen brought the salvage of the wrecked car to plaintiff's place of business, and contracted with plaintiff to have the car repaired; the contract price for labor and material necessary to replace damaged glass and grill work and to make necessary body repairs, including a repaint job, was the sum of $425. At the request of Allen, other repairs, etc., were made by plaintiff on the car amounting to $46.95, making $471.95 as the total amount due on the car. The work was completed in December, 1943.
In between the time the car was wrecked and the time it was delivered to plaintiff to be repaired, the loss on the car was adjusted between the insurance company, the owner of the car, and the Baton Rouge Securities Co., Inc., the holder of the chattel mortgage note, as a total loss, the value of the car being fixed at $1027, less $50 deductible as provided for by the policy, making a net loss of $977.
It appears from the evidence that on January 22, 1944, there was issued by the insurer a draft payable to Allen and the Baton Rouge Securities Co., Inc., for the sum of $977 in payment of the total loss of the said car as the interest of the said payees may appear. This draft was endorsed by the payees and deposited by the Baton Rouge Securities Co., Inc., in the City National Bank at Baton Rouge in its general checking account for collection, nothing being posted as a credit to the account of Allen. However, prior to the endorsement and the deposit of the draft, it was agreed and understood by the payees that the proceeds of the draft would be distributed in the following manner: Credit on the past due installments of the note, $171; Premium on New Insurance on the car, $48.75; Personal obligations of Allen with Burton Watson, $608; and Balance to Guy A. Allen, $149.25, totaling the sum of $977.
It further appears that pursuant to this agreement, on January 22, 1944, the Baton Rouge Securities Co., Inc., paid to Allen $149.25, and on January 28, 1944, paid to Burton Watson the additional sum of $608, and on February 1, 1944, credited the note with $171, being the payment of 3 past due installments.
Under the testimony of Mr. Bynum, an official of the Securities Company, at the time that the agreement was had with Allen and the release of the funds to him, that is, January 22, 1944, Allen represented to Bynum that he had purchased the salvage of the automobile; that he, Allen, had had the automobile repaired, and had paid for the repairs. Bynum insisted that there be furnished him evidence that the car was repaired and that the repairman inform him of such. It appears that instead of contacting plaintiff in rule, Allen had Burton Watson, the party from whom he had purchased the car, to contact Mr. Bynum, who was informed that it was satisfactory to distribute the funds as proposed. It further appears that Allen had purchased another car from Burton Watson in the meantime, and that the sum of $608 was to be applied, and was applied in partial payment thereof to the knowledge of Mr. Bynum. In the confection of the settlement a new policy of insurance, to secure the unpaid balance, after the giving of credit for $171, was taken on the car.
On April 20, 1944, plaintiff filed suit against Allen for the sum of $471.95 for repairs on the car, plus storage on the car of $21, plus $36.25 due for repairs on another car of plaintiff, totalling the sum of $529.21, averring that he had a lien on the car to that amount. On May 11, 1944, he obtained a judgment against Allen for the amount due him, with recognition of a lien and privilege on the car. He had a writ of fi. fa. issued on his judgment and the car was seized by the Sheriff.
Prior to the sale under his writ, plaintiff obtained a rule against the Baton Rouge Securities Co., Inc., and the Clerk of Court for the Parish of East Baton Rouge to have erased and cancelled the chattel mortgage as appearing on the records for the Parish of East Baton Rouge in favor of the Baton Rouge Securities Co., Inc., as having been *Page 580 
extinguished or discharged. The answer of the Baton Rouge Securities Co., Inc., and the nominal defendant, the Clerk of Court, is a general denial. The defendants in rule did not question the mode of procedure.
The trial of the rule resulted in a judgment for the defendants in rule. Plaintiff has appealed.
We are convinced from our appreciation of the facts in this case, and our understanding of the law pertinent thereto, that at the time the Baton Rouge Securities Co., Inc., received from the insurance company, on January 22, 1944, the draft of $977, and deposited the same to its general checking account, such rights and claims it may have had by virtue of the chattel mortgage had been extinguished and discharged. The total wreck or destruction of the automobile can be said, in the language of a layman, to have been a sale of the automobile to the insurance company with the consent of both Allen and the Securities Company. In fact, as viewed by all of the parties to the act of mortgage and the insurance company, the security for the payment of the note had been destroyed and had passed out of existence and what remained of the wrecked automobile belonged to the insurance company. The obligation of the insurance company was to pay to the Securities Company and Allen the actual cash value of the car at the time of the wreck, less $50. The amount due by the insurance company under the policy of insurance, was mutually agreed to be the sum of $977.00. Under the terms of the chattel mortgage the proceeds were dedicated to the payment of the mortgage debt, and under the terms of the policy, the Securities Company was entitled to these proceeds. When these proceeds were turned over to the Securities Company in an amount sufficient to discharge the note, the obligation and the proceeds became merged, resulting in the satisfaction of the mortgage.
It is now well established, without the necessity of citing authorities, that where insurance is taken out by the mortgagor for the benefit of the mortgagee, or is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus if any, after the extinguishment of his debt, for the benefit of the mortgagor.
Under the very terms of the chattel mortgage the proceeds of the insurance were to be applied to the replacement of the property or in satisfaction and discharge of the debt. The proceeds were not used to replace the property, therefore it follows that the proceeds must be said to have been employed in the discharge of the debt and in satisfaction and extinguishment of the chattel mortgage.
At the time of the payment of the proceeds of the insurance policy to the Securities Company and Allen, plaintiff Adams had acquired a lien and privilege on the salvage of the wreck. It is well settled that a second mortgage holder may question the right of a first mortgage holder and to show that the first mortgagee's rights have been extinguished; it stands to reason that a holder of a lien second in rank to a purported mortgage has the right to show that the purported mortgagee's rights have been extinguished.
It is our appreciation of the facts that the method of division of the proceeds was no more than a new loan of $648 out of the sum of $855 belonging to the Securities Company. The fact that the Securities Company did not take a new note from Allen does not alter the situation. The transaction cannot be viewed in any other light, in so far as plaintiff is concerned, but that it was a re-issuance of the note. The chattel mortgage rights were extinguished and the re-issuance of the note did not revive the mortgage by which the note was originally secured to the prejudice of plaintiff who had acquired rights upon the property. To hold otherwise under the facts in this case would be against good conscience. If the Securities Company diverted the proceeds in the payment of other debts of Allen it has only itself to blame.
For these reasons, the judgment appealed from is annulled, reversed and set aside. It is ordered that the rule issued on June 12, 1944, be made absolute, and accordingly, that there be judgment in favor of plaintiff Charles J. Adams, and against defendants in rule, Baton Rouge Securities Co., Inc., and S.Y. Watson, Clerk of the District Court for the Parish of East Baton Rouge, ordering and commanding the Clerk of the said Court to cancel and erase from the records of his office the inscription of a certain vendor's lien and chattel mortgage in favor of Burton and Watson by Guy W. Allen, filed on November 4, 1943, and same day recorded in Chattel Mortgage Book No. 53, Folio 111, being original No. 3151-P; defendant Baton Rouge Securities Co., Inc., to pay all costs. *Page 581