This case was submitted to the district court on an agreed statement of facts, on which the trial judge resolved the question at issue in favor of the plaintiff and awarded her judgment in the sum of $2,000, the amount she was seeking to recover from the defendant insurance company. From that judgment the defendant has taken this appeal.
From the statement of facts found in the record it appears that the plaintiff, Mrs. Isabelle Guinn, on August 3, 1942, sold to a party by the name of C. Bailey Behrnes, a certain property situated on Jefferson Highway in the Parish of East Baton Rouge for the price and sum of $18,000. In representation of the purchase price Behrnes executed one note for the sum of $9,000 payable in forty-five monthly installments of $200 each, commencing November 1, 1942 with interest at 6%, another note for the sum of $6,408 payable September 1, 1946, with interest at 6%, and he also assumed the payment of a series of notes aggregating $2,592 which, it was recited in the act of sale, were then held by Mrs. Leslie Michael Pecue. These notes were secured by a first mortgage on the property sold.
The two notes executed by Behrnes were secured by a vendor's lien and mortgage on the property and he also agreed to have the property purchased insured against loss by fire in the sum of $3,000. In carrying out that obligation he purchased a policy of insurance from the defendant, Houston Fire Casualty Insurance Co., which covered the main building on the property to the extent of $2,000.
On December 4, 1945, the building which had been insured was totally destroyed by fire and notwithstanding the fact that there was a loss payable clause in favor of the first and second mortgagees as their interest may appear, the insurance company, in settlement of the loss, issued its draft on December 28, 1945 to the joint order of Mr Mrs. C. Bailey Behrnes, Leslie Pecue and *Page 614 
Louisiana National Bank for the sum of $2,102.11, totally ignoring Mrs. Isabelle Guinn, the second mortgagee. The amount of $102.11 included in the draft appears to have been due the Louisiana National Bank under a policy endorsement agreement and is not involved in this lawsuit.
The draft contained the statement to the effect that it was in payment of the loss sustained and there is no question but what it was given by the insurance company in an attempt to pay for the loss which it had covered.
In due time the draft was endorsed by C. Bailey Behrnes, Mrs. C. Bailey Behrnes, Mrs. Leslie Pecue and Leslie Pecue and was promptly paid on presentation at the bank on which, it was drawn. From the agreed statement of facts it also appears that although the. Pecues name appeared on the draft and they endorsed it, they did not participate in the proceeds, as apparently, they waived their share in favor of the Behrnes. In the meantime, however, they held the last of the series of mortgage notes which had been assumed by the Behrnes. This last note amounted to the sum of $864.
On March 8, 1946, the plaintiff, through her attorneys, wrote the local agent of the defendant insurance company in Baton Rouge advising him that they were making demand that Behrnes apply the balance due on the Pecue mortgage note in the amount of $864 out of the proceeds of the draft which had been issued in payment of the loss by fire and that they were likewise calling on Behrnes to instruct them, the insurance company, to pay the remainder of the $2,000 fire loss to Mrs. Guinn who was the holder of the second mortgage. Apparently that letter went unheeded for on August 20, 1946, plaintiff again through her attorneys, addressed a letter to the defendant company at its office in Houston, Texas, informing them that they had written their local agent making demand for the loss wrongfully paid to the Behrnes, in violation of the mortgage payable clause in the policy, and making final demand for the full amount of the $2,000 with 5% interest per annum from date that payment had been made to C. Bailey Behrnes.
In the meantime, that is, on May 22, 1946, plaintiff had instituted foreclosure proceedings on the two vendor's mortgage notes which she held, one in the sum of $9,000 and the other in the sum of $6,408. The property was advertised to be sold on July 13, 1946 but as it was discoverd that there was some defect in the advertisement, the sale was postponed. On that date however plaintiff paid to Mrs. Leslie Pecue, the holder of the last of the series of first Mortgage notes, the sum of $903.60 in full for the principal and interest due at that time. The property was re-advertised for sale on August 17, 1946, without benefit of appraisement, and on that date, it was adjudicated to the plaintiff for the sum of $7,000. It was upon the defendant's refusal to pay the $2,000 as demanded by plaintiff in her attorney's letter of August 20, 1946, that she instituted this suit on August 28, 1946 to recover that amount in full, with interest, as already stated.
The defendant company resisted the suit on the ground that it had already issued its draft in the sum of $2,102.11 in full payment of the fire loss and had discharged its liability in full under the policy and the endorsements on the draft it had issued. It also contended that payment of that sum to Mrs. Leslie Pecue and Leshe Pecue had fully discharged its liability to them under the mortgage payable clause and therefore plaintiff could not acquire from either of them, by virtue of having purchased the note of $864 from them, any greater right than they, or either of them had as the owner of that note. It also contended that as the property was sold without the benefit of appraisement, by virtue of Act No. 28 of 1934, the mortgage indebtedness on the property was fully satisfied and discharged by reason of the Sheriff's sale even though the proceeds of such sale were insufficient to pay the mortgages in full.
[1] The mortgage clause attached to the policy of insurance reads in part as follows: "Loss or damage, if any, under this policy, shall be payable to Leslie Pecue and Mrs. Isabelle Guinn, Baton Rouge, La. as first and second mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor *Page 615 
by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. In the event the mortgagor or owner neglects to pay any premium due under this policy, the mortgagee (or trustee) in consideration hereof covenants and agrees with this company that it will, on demand, pay the same."
Thus it is seen that this defendant insurance company entered into a binding agreement with Leslie Pecue and with Mrs. Isabelle Guinn in the event a loss arose under the policy and it became necessary for it to pay. That agreement was to pay each, as the first and second mortgagee, respectively, the amount of the loss as his or her interest may appear. In the case of Leslie Pecue, the amount was the sum of $864 and in the case of Mrs. Isabelle Guinn, it was an amount far in excess of the full amount of the draft which was issued to cover the entire loss. The obligation was a personal one in favor of the two named mortgagees and when the loss arose on December 4, 1945, the policy being then in full force and existence, the insurance company became obligated to each in the amounts stated. In issuing its draft on December 28, 1945, in favor of certain parties, including Leslie Pecue, it fulfilled its obligation as far as he was concerned, as the draft was for an amount more than his interest as mortgagee appeared, but in omitting to name Mrs. Isabelle Guinn as a payee, it failed in its obligation to her as the other party it had contracted with under the mortgage clause in the policy.
But it is urged on behalf of Mrs. Guinn that by having merely endorsed the draft without receiving any of the proceeds and by having retained the mortgage note he held, Pecue waived all of his rights under the policy in favor of Behrnes and that Mrs. Guinn having subsequently bought Pecue's note from him, she should not be made to suffer the loss of that amount. We believe, however, that Mrs. Guinn's mistake was to buy and pay for the Pecue note. She bought it on July 13, 1946, after it was more than three years past due and when she knew that the insurance company had issued its draft to Pecue, the holder, and other parties, in an amount more than sufficient to pay it in full. She certainly had this information as early as March 8, 1946 for on that day, through her attorneys, she wrote the insurance company advising that she was making demand that Behrnes apply the sum of $864 out of the proceeds of the draft that had been issued in payment of the Pecue first mortgage. The insurance company was under no obligation to see that Pecue surrendered and cancelled the note. All that it was interested in was in carrying out that part of its agreement to pay him to the extent that his interest in the loss that had arisen appeared and this it did by making him a payee of the draft it issued in payment of the loss. Pecue endorsed the draft and it was duly paid. What disposition he made of the proceeds, as far as he was concerned, was a matter in which it was not interested and for which it cannot be held responsible.
[2] The second contention raised by counsel for the defendant is to the effect that the plaintiff, having permitted the property to be sold at foreclosure without the benefit of appraisement, the indebtedness claimed, as arising under the insurance, had been wiped out by virtue of the provisions of Act No. 28 of 1934. We are unable to read in that act anything which supports counsel in their contention. That act as stated by the Supreme Court in the case of Southland Investment Co. v. Motor Sales Co. et al., 198 La. 1028, 5 So.2d 324, 325, "declared as a public policy of this state that 'where any mortgage or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether the same be real or personal, or of both character; and the proceeds of such sale are insufficient to satisfy the debt for which said property is sold, said debt shall nevertheless stand fully satisfied and discharged, and such mortgage or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in no manner whatsoever.' Section 1. Unquestionably this act was enacted for the benefit *Page 616 and protection of the mortgage debtor * * *." (Our italics.) The mortgage debtor in this case is not seeking any benefit or protection under the act. In fact he ought to be well satisfied in the way things turned out as he undoubtedly received $2,000 which he was not entitled to when the insurance company issued its draft in his favor along with the first mortgage creditor who waived his right also in his favor. The act itself seems to be very plain in its terms that all it intended to do was to restrict the mortgage or other creditor who had the property securing his debt sold without the benefit of appraisement, from proceeding against the debtor or any of his property for a deficiency judgment and it certainly did not have in mind to prevent him from proceeding to collect a claim which he thought he was justly entitled to and which had nothing to do with the mortgage indebtedness itself. As stated heretofore the loss payable clause in this policy was a personal contract under which the insurance company bound itself to pay first, the first mortgagee and then the second mortgagee in case of loss by fire of any of the property it had insured. That is the obligation which plaintiff has a right to have enforced since the insurance company failed to comply with it so far as she was concerned. Her right of action to recover the amount due her under that obligation arose when the loss by fire occurred on December 4, 1946 and it could not be affected by the foreclosure sale which took place long thereafter.
We hold therefore that plaintiff is entitled to recover from the defendant that amount which was erroneously paid by it to C. Bailey Behrnes and Mrs. C. Bailey Behrnes by its draft of December 28, 1945, that is the sum of said draft that is in excess of the $864 which had to be applied to the payment of the first mortgage under the mortgage clause of the policy, less the sum of $102.11 also included in the said draft but which is not involved in this proceeding. The amount due the plaintiff therefore is the difference between $2,000 and $864, or the sum of $1,136.
For the reasons herein stated it is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount of the award from the sum of $2,000 to the sum of $1,136 and that as thus amended, it be affirmed.
The costs of this appeal are to be paid by the plaintiff, appellee, and all other costs by the defendant, appellant.