**EAGLE STAR INSURANCE COMPANY, Ltd.**

v.

**Billy G. PARKER et al.**

**Civ. A. No. 10055.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Sept. 13, 1965.

—◆—

Paul R. Mayer, Mayer & Smith, Shreveport, La., for plaintiff.

John M. Shuey, Shuey & Smith, Milton C. Trichel, Jr., Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., A. G. Sanderson, Jr., Smith, Sanderson, Stroud & McClerkin, Texarkana, Ark., Robert E. Eatman, C. P. Brocato, Shreveport, La., Carey J. Ellis, Jr., Rayville, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

## RULING ON MOTION FOR NEW TRIAL

The basis of this interpleader action brought by Eagle Star Insurance Company, Ltd., a domiciliary of London, England, with its principal place of business in the United States in New York, is apparently Rule 22 of the Federal Rules of Civil Procedure.[1] The adverse claimants, originally 36 in number,[2] are residents of Louisiana, or states other than New York. The sum of $20,501.62 has been deposited in the registry of the

1. In our initial order in this matter, filed March 3, 1964, it was inadvertently stated that jurisdiction was based upon 28 U.S.C. § 1335. This case is rather one of "non-statutory" interpleader. See John Hancock Mut. Life Ins. Co. v. Kraft, 200 F. 2d 952 (2 Cir. 1953); Rossetti v. Hill, 162 F.2d 892 (9 Cir. 1947); Mallers v. Equitable Life Assur. Soc., 87 F.2d 233 (7 Cir. 1936); 2 Barron & Holtzoff, Federal Practice & Procedure, § 552 (1961).

2. The claimants occupy three groups. The first group contains those having labor-er's liens. These claimants apparently have been satisfied by a prior seizure and sale of the property to which their liens had attached, as they have asserted no claims in this Court. The second group contains materialmen and the third group, the conditional vendor and its assignee whose claims form the basis of our determination. Our decision in this case necessarily includes the rejection of any claims of those parties who failed to timely assert them.

Court and forms the object of the various competing claims.[3]

The sum deposited in the registry of the Court represents the payment of a loss and damage sustained by a certain drilling rig insured against such loss by the plaintiff insurer. The insured under the policy is A. T. Farr, Jr., a resident of Arkansas. On October 8, 1959, Farr entered into a conditional sales contract with Fred E. Cooper, Inc., an Oklahoma corporation, for the purchase of a complete drilling rig and equipment for the sum of $210,097.81. The contract, properly recorded in Arkansas, obliged Farr to insure the rig against fire and other physical damage to its full insurable value. Farr procured such a policy of insurance from plaintiff, Eagle Star Insurance Co., Ltd., which contained a mortgage clause endorsement (for which an additional premium was paid) in favor of the conditional vendor, Fred E. Cooper, Inc., and C.I.T. Corporation (Cooper's assignee), as their interest may appear.

Farr operated the rig in Arkansas, Texas and Louisiana, where, on February 11, 1963, on a lease known as T. J. Owen #1 in Richland Parish, the rig was damaged by windstorm.

Subsequent to the commencement of operations in Richland Parish, Louisiana, the privileges (liens) of various laborers and materialmen attached to the rig pursuant to Louisiana Acts 1958, No. 23, § 1 (LSA-R.S. 9:4861). These privileges were properly filed and enforced, ultimately resulting in judgments against Farr and the seizure and sale of the rig to satisfy their claims. In these suits the conditional vendor of the rig, Fred E. Cooper, Inc., tried to enforce its conditional sale contract. The Louisiana Courts[4] held that Cooper, under applicable rules of Arkansas law, had elected to sue on the debt owed by Farr, thus affirming the sale and waiving the reservation of title, instead of re-taking the property.[5] Thus as a mere creditor of Farr holding a money judgment, Cooper was held to be entitled to the enforcement of its privilege as a seizing creditor against the rig only following enforcement by laborers and materialmen. See LSA-C.C.P. Art. 2292 (1960). The record of those cases indicates that the proceeds of the Sheriff's sale of the windstorm damaged rig were insufficient to satisfy totally the claims of the materialmen (all the laborers, who had first priority, were satisfied), although there had been a separate appraisement of all major components of the rig, and the sales were for amounts in excess of appraisements. Of course, the claim of Cooper, which occupied third priority, remained unsatisfied.

The present action is a renewed contest between the partially satisfied materialmen[6] (hereafter referred to collectively as (Tri-State) and Fred E. Cooper, Inc., for the proceeds of plaintiff's insurance policy.

The procedural history of the action in this Court will lay the background for its decision. The laborers, who were also joined as claimants, have made no appearance in the case inasmuch as they were satisfied by the seizure and sale in the State Courts. By a judgment of this Court filed February 10, 1965, claimant AMF-Tuboscope, Inc., was granted summary judgment and allowed to with-

---

3. An additional sum of $789.92 was added, which, by agreement between the parties, was due to Heldenbrand, Inc., claimant No. 23 in plaintiff's petition.

4. Fred E. Cooper, Inc., v. Farr, 165 So. 2d 605 (La.App.2d Cir. 1964), writ refused, 246 La. 838, 167 So.2d 667.

5. It is immaterial for the purposes of this action whether Cooper be characterized as "Owner" under a conditional sales contract or merely a mortgagee, for in either case its interest would be protected by plaintiff's insurance policy.

6. The materialmen and suppliers who were accorded equal priority by the Louisiana State Courts under LSA-R.S. 9:4861 et seq. are the following: Tri-State Oil Tool Industries, Inc., The Dia-Log Company, Superior Iron Works and Supply Company, Inc., Dowell Division of the Dow Chemical Company, Inc., Universal Mud and Supply Corporation, and Gilbert Oil Company, Inc.

draw $1,824.17, to which it was adjudged entitled by reason of a contract between it and plaintiff insurer, under the policy, to make repairs to the insured property for its preservation subsequent to the loss. By a judgment filed February 19, 1965, plaintiff was released and discharged from all liability arising under its policy of insurance with Farr and allowed to withdraw from the fund attorney's fees of $750.00, plus all court costs by it incurred, a total of $842.48.

After a hearing on Cooper's motion for summary judgment it was awarded the balance of the fund. However, when attorneys who were absent from the hearing objected, the parties successfully moved the Court to vacate the judgment and re-set the hearing. At the hearing on January 6, 1965, Cooper's motion was taken under advisement on briefs to be filed in opposition within 30 days and proponent to reply within 15 days thereafter. When counsel for Tri-State failed to file a brief in opposition to the motion of Cooper, the Court, on March 10, 1965, ordered judgment entered in favor of Fred E. Cooper, Inc., for the balance of the fund.

On March 11, 1965, Tri-State filed a motion for new trial along with a brief " * * * in opposition to the motion for summary judgment made by Fred E. Cooper, Inc. * * * " The motion of Tri-State came on for hearing on June 9, 1965, when it was taken under advisement on briefs to be filed in opposition within 30 days and in support within 15 days thereafter. A brief by Cooper in opposition to Tri-State's motion for new trial was filed timely, on June 29, 1965. Although counsel for Tri-State has been informed telephonically by the Deputy Clerk of this Court of the tardiness of his brief, he has persisted in failing to act. Inasmuch as some 60 days have passed since the filing of Cooper's briefs, we have no alternative but to decide this motion without the aid of proponent's brief.

After a thorough and careful consideration of all matters within the record in this case, and giving Tri-State the benefit of every doubt, we feel constrained to deny its motion for new trial.

■■■ The fund presently held in the registry of this Court represents the payment of a loss and damage sustained to a certain drilling rig by reason of windstorm under a contract of insurance between A. T. Farr and the Eagle Star Insurance Company. Under Louisiana law,[7] as elsewhere, agreements legally entered into have the effect of laws on those who have formed them. If a contract contains a stipulation in favor of a third person, if accepted by that person, that stipulation is also binding on the parties. Thus Fred E. Cooper, Inc., as beneficiary of the mortgage clause endorsement, is entitled to share in the proceeds of the policy "as his interest may appear."[8]

Tri-State contends that as holder of a privilege upon the drilling rig under LSA–R.S. 9:4861 which would otherwise entitle it to payment by priority before Cooper, it should also hold a preference in the insurance fund which stands in the place of the damaged property. In support of this theory Tri-State urges that the provisions of LSA–R.S. 9:4861.-2, which prohibit the removal of any property subject to the privilege and

7. LSA–C.C. Art. 1901 (1870). Any rights of the materialmen and suppliers to be paid from the insurance fund must arise under the laws of Louisiana. However, we feel constrained by the *Erie* doctrine to apply the laws of that State in any event, even though the contract of insurance was consummated under the laws of Arkansas.

8. In Louisiana the beneficiary of such a loss payable clause is more accurately known as the beneficiary of a *stipulation pour autrui*. See Tilley v. Camden Fire Ins. Ass'n, 139 La. 985, 72 So. 709 (1916). In Liverpool & London & Globe Ins. Co. v. Aleman Planting & Mfg. Co., 166 La. 457, 117 So. 554 (1928) after discussing the binding effect of the loss payable clause on the parties to the insurance contract the court said: "A contrary doctrine would destroy the loss payable clause, or stipulation pour autrui, and leave the mortgagee depending upon the good faith or generosity of the assured."

prevent the destruction of the privilege by any such removal, should be applied by analogy to its claim. Thus, in addition to the contention that the privilege attached directly to the fund, the privilege holder argues that windstorm damage should be counted as an unlawful removal of the property and that its privilege should follow and attach to the insurance fund, in order that it would be paid by priority.

To resolve this question we must examine the character of the privilege asserted by Tri-State.

▇▇▇▇ Privileges, which resolve themselves into a right or preference accorded to certain creditors, are either general privileges bearing upon the totality of the property of the debtor, or special privileges bearing only upon one or several determined things.[9] Such preferences among creditors constitute a kind of security device because the preferred creditors are not subjected to the general rule of proration but are paid in full before ordinary creditors get anything.[10] The subject matter of privileges is *stricti juris*, and therefore there must be a written text of law to support the creation and existence of each privilege.[11]

▇▇▇▇ Turning to the privilege accorded by LSA–R.S. 9:4861 asserted by Tri-State, we find it to be a special one attaching to the drilling rig and its equipment and appurtenances, among other specified things. It does not attach to any other property of the debtor; neither does it depend upon the ownership of the property to which it attaches. Thus we must hold that, in accordance with the principle of *stricti juris*, there is no basis under LSA–R.S. 9:4861 for

the attachment of the privilege to the fund held in the registry of this Court.

Because there is no Louisiana case directly in point we feel it our duty as a federal court applying Louisiana law to discuss the jurisprudence which we find supporting our decision.

In Guinn v. Houston Fire & Cas. Ins. Co., 32 So.2d 613 (La.App.1st Cir. 1947), plaintiff held a second mortgage on a house insured against loss by fire with the defendant. The policy taken out by the mortgagor, contained a loss payable clause in favor of the plaintiff as her interest might appear. When the house was destroyed by fire, the defendant paid the face amount of the policy (which was less than the sum of the first and second mortgages) jointly to the first mortgagee and the mortgagor. In a suit on the policy it was held that the plaintiff was entitled to its proceeds (less the amount of the first mortgage) as her claim was superior to that of the mortgagor by reason of the loss payable clause, or *stipulation pour autrui*, contained in the policy.

More nearly in point seems to be the case of Adams v. Allen, 19 So.2d 578 (La. App. 1st Cir. 1944), which involved a dispute between the holder of a mechanic's lien and a chattel mortgagee over the proceeds of a policy of insurance covering a mortgaged automobile. Although the decision differs from the case at bar, principally because the insurer paid the mortgagee under the loss payable provisions of the policy and the mortgagee attempted to re-issue the mortgage for a new debt of the insured subsequent to attachment of the mechanic's lien, it contains a discussion of the obligation of the insurer to pay the

---

9. See 2 Planiol, Civil Law Treatise (An English Translation by the Louisiana State Law Institute) nos. 2542 et seq. (1959).

10. LSA–C.C. Art. 3183 (1870): "The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference." Art. 3184: "Lawful causes of preference are privilege and mortgages."

11. LSA–C.C. Art. 3185 (1870): "Privilege can be claimed only for those debts to which it is expressly granted in this Code." This must be understood to include statutes expressly granting privileges. In Boylan's Detective Agency v. Arthur A. Brown & Co., 157 La. 325, 102 So. 417 (1924), the Court said, "No considerations of equity can enter into the determination of the right of privilege."

mortgagee under the provisions of the policy. Ultimately it was held that the holder of the mechanic's lien was not entitled to share in the proceeds of the policy, but only to the enforcement of his lien and privilege against the automobile. See also Hartford Fire Ins. Co. v. Landreneau, 19 La.App. 280, 140 So. 52 (1st Cir. 1932).

Although discussion of decisions from other jurisdictions is not appropriate to a discussion of Louisiana law, it is pertinent to here footnote those decisions directly in point which we feel to be in accord with Louisiana law.[12]

Tri-State urges that the case of Bankston v. Commercial Credit Corporation, 86 So.2d 245 (La.App. 1st Cir. 1956), supports its contention that the indebtedness of Farr to Cooper was discharged by the judicial sale of the rig and therefore Cooper would have no right to payment under the loss payable clause of the insurance contract. In *Bankston* the mortgagee in whose favor the loss payable clause existed foreclosed its chattel mortgage on the insured automobile and "it-

self purchased the Ford at sheriff's sale without benefit of appraisement and for the sum of *$1,659.09, or the total amount of indebtedness due it under the notes.*" (Emphasis by the Court) 86 So.2d at 246. In holding that the mortgagee's action discharged the debt and thus precluded recovery from the insurer, the court distinguished the *Guinn* case, noting that in that case the property was purchased by the mortgagee for an amount "substantially below the mortgage debt." Because the case at bar is more nearly like *Guinn*, we find *Bankston* readily distinguishable. Moreover, contrary to the assertion of Tri-State, the debt owing by Farr to Cooper was not only not discharged by the enforcement action in the Louisiana courts but was specifically recognized and a money judgment rendered. See Fred E. Cooper, Inc., v. Farr, supra, footnote 3, and accompanying text.

After further consideration of all points raised and authorities cited by Tri-State we find that its position is not well founded and deny its motion for a new trial.

---

12. In Associates Discount Corp. v. Clark, 240 Miss. 723, 128 So.2d 535 (1961), an automobile collision between Clark and Bowen resulted in a judgment in favor of Clark for $15,000. Bowen's damaged automobile was sold under Mississippi's non-resident attachment statute. Bowen's collision insurer paid into the court the amount due under its policy. Associates Discount Corp., the holder of a chattel mortgage, unrecorded in Mississippi, intervened and claimed the proceeds of the insurance. The Mississippi Supreme Court held Associates to be entitled to the insurance proceeds under the policy's mortgage clause: "The lower court was correct in awarding the proceeds of the sale of the car to Clark. The policy of insurance * * * provided that the proceeds of such insurance would be payable to the insured Bowen and Associates Discount Corporation as their interests might appear. It is agreed that the amount of the debt due Associates Dis-

count Corporation exceeded the amount of the insurance due. The right of Associates Discount Corporation to the insurance vested when the damage was done to the car. * * * *One who has a mere lien on the property insured has no claim on the insurance money* for a claim on the insurance money may arise only out of contract." (Emphasis added) 128 So.2d at 537. In Walsh v. Tadlock, 104 F.2d 131 (9 Cir. 1939), cert. denied 308 U.S. 584, 60 S.Ct. 107, 84 L.Ed. 489, it was held that maritime liens (which bear more resemblance to the privileges of Louisiana than do common law liens in favor of materialmen were extinguished with the destruction of the vessel and did not attach to the proceeds of an insurance policy, to which a mortgagee was entitled by priority by reason of a loss payable clause contained in the policy. Accord: 5 Appleman, Insurance Law and Practice § 3382 (1941); 46 C.J.S. Insurance § 1150.