(134 So. 407)

HARDY v. COMMERCIAL STANDARD INS. CO. (COMMERCIAL CREDIT CO., Intervener).

No. 30666.

March 30, 1931.

Rehearing Denied April 27, 1931.

Roberts & Naff, of Shreveport, for plaintiff appellant.

Jackson & Smith, of Shreveport, for defendant appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, for intervener appellee.

## ODOM, J.

The defendant insurance company insured plaintiff's automobile against theft and fire in the sum of $1,900. The automobile was totally destroyed by fire and proof of loss was filed with the company. It refused to pay the claim and plaintiff brought this suit for the amount of the policy, plus 25 per cent. damages and $750 attorneys' fees.

The policy had indorsed thereon a loss payable clause making the proceeds thereof payable to the Commercial Credit Company as its interest might appear. The credit company intervened in the suit, setting up that plaintiff was indebted to it in the sum of $726.04, plus interest at 8 per cent. and 25 per cent. attorneys' fees, as evidenced by note secured by chattel mortgage on the car, and prayed for judgment against plaintiff and the insurance company in solido for the amount of its debt, interest, and attorneys' fees, and judgment against the insurance company for an additional sum equal to 25 per cent. of the amount of its claim as pen-

alty against the insurance company for its failure to pay the policy within sixty days.

The insurance company resisted the payment of the policy on two grounds: First, that at the time the policy sued on was issued there was another policy in force on the same car, the policy containing a stipulation that it should be void in the event of the existence of other insurance covering the same property; and, second, to quote defendant's brief, "there should be no recovery under the policy involved on account of a violation of a very material warranty in the policy."

As between the intervener and defendant company there is no contest. But as between plaintiff and intervener there are involved the questions whether intervener is entitled to attorneys' fees on the amount which it claims, and whether it is entitled to a pro rata division of the penalties against the insurance company.

The intervener dismissed its demand for a personal judgment against the plaintiff. There was judgment in the lower court in favor of the plaintiff and against the insurance company for the amount of the policy with 5 per cent. interest thereon, $400 attorneys' fees, and $475 as statutory penalty. There was judgment in favor of the intervener and against the insurance company for the sum of $726.04, with interest at 8 per cent., plus 25 per cent. of the amount due as attorneys' fees, and plus 25 per cent. of said amount as penalties.

From this judgment the insurance company and the plaintiff appealed.

■ Prior to the issuance of the $1,900 policy here involved, the Mayfield-Jones Insurance Agency issued to plaintiff a policy for $2,500 on his automobile in the Union Automobile Insurance Company, and later,

upon instructions of said insurance company, canceled said policy without notice to plaintiff and substituted therefor a policy for the same amount in the defendant insurance company, the Mayfield-Jones Agency representing both insurance companies. Subsequently, said Mayfield-Jones Agency, upon instructions from the defendant company, took up the $2,500 policy from the Commercial Credit Company, which held it under a loss payable clause, and substituted therefor a similar policy for $1,900, which is the one involved in this suit.

The defendant company contends that inasmuch as the original policy, that is, the one in the Union Automobile Insurance Company, was canceled without the knowledge or consent of the plaintiff, the pretended cancellation was not binding upon plaintiff, and therefore that policy was in force at the time the one sued on was issued; and that as the application for the policy sued on sets out that there was no other insurance in force on the car at that time, the plaintiff was guilty of misrepresentation in this respect, and therefore the policy sued on is void under its express terms.

There is no merit in this contention for the reason that the application for the policy sued on was filled out by Mayfield-Jones, the agents of the company, and not by plaintiff. Plaintiff made no representation at all with reference to other insurance. Not only that, Mayfield-Jones was the agent of both insurance companies and had full knowledge of the facts in connection with the issuance of each of the three policies. Under such circumstances the insurance company cannot claim a forfeiture. The cases of Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876, and Gitz Sash Factory, Inc., v. Union Ins. Soc. of Canton, Ltd., 160 La. 381, 107

So. 232, are in point. See also Cooley's Briefs on Insurance (2d Ed.) vol. 5, p. 4111.

██ On the second point the defendant contends that in his application for the insurance, plaintiff made a false statement with reference to his occupation; that instead of his occupation being that of proprietor of a filling station and a wash rack for automobiles, as he stated in his application, his occupation was in fact that of a bootlegger.

Pretermitting a discussion of the question whether a misrepresentation of this kind would void the policy in the absence of any showing that the fact of plaintiff's being engaged in the bootlegging business, if he was, had anything whatever to do with the destruction by fire of the automobile, we rest our decision on our conclusion that the testimony does not show, as a fact, that plaintiff was a bootlegger.

The word "bootlegger" has a well-understood meaning. In ordinary parlance a "bootlegger" is one who is engaged secretly in the occupation or business of peddling and selling intoxicating liquor in violation of some law.

Records from the district and city courts of Shreveport show that during the period from 1924 down to 1929, plaintiff was several times prosecuted and convicted of "having in his possession intoxicating liquor, to wit, whisky, for beverage purposes." He was never prosecuted for selling liquor. In 1924 and again in 1929 he had in his possession considerable quantities of liquor, such quantities as would indicate that he possessed it for sale. But there was no proof that he did sell any, and no direct proof that he intended to do so. From the fact that he had considerable quantities in his possession on those two occasions, the officers drew the inference that he possessed the liquor for sale. On the occasions between 1924 and 1929, when he was prosecuted, he had only small quantities in possession, not enough to indicate that he possessed it for the purpose of sale. In the absence of any showing that he did at any time sell liquor, we do not think his having in possession, on two occasions separated by the lapse of approximately five years, such quantities of liquor as might lead to the inference that he intended to sell at least a portion of it, a sufficient basis for a conclusion that plaintiff was in fact a bootlegger when he applied for this insurance. The fact that he was conducting a filling station and wash rack at the time was not disputed.

The defendant insurance company is clearly liable for the amount of the policy, as it is shown that the value of the car destroyed was in excess of the amount of the policy.

██ The company refused to pay the loss. Act 59, Extra Session of 1921, requires companies engaged in the business of insuring automobiles, trucks, etc., to pay losses by fire or theft within sixty days from the date on which proof of loss is delivered to the company, and provides that "should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, twenty-five per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorneys' fees for the prosecution and collection of such loss." (Section 3.) The court properly held the insurance company liable for the penalty amounting to 25 per cent. of the insurance, or $475. The court fixed the fees of the attorneys at $400 and they ask that we increase the amount to $500. All the work done by coun-

sel for plaintiff in this case was under the eye of the court. The court heard testimony as to the value of the service rendered and fixed the fee at $400. Under the showing made we shall not disturb the judgment in this respect.

. ▮▮ The plaintiff contends that intervener is not entitled to any attorney's fees on the amount claimed by it. The act of sale and chattel mortgage contains the following stipulation:

"It is agreed that in case legal proceedings be instituted for the recovery of said note or of any installments due thereon, or in case it shall be necessary to employ counsel to collect or attempt to collect same or to enforce any of the covenants herein contained or to protect the security herein described, the said mortgagor binds himself to pay the fee of the attorney at law who may be employed for that purpose, which fees are hereby fixed at twenty-five per cent of the amount then due and exigible."

The intervener prayed for judgment against the insurance company and plaintiff in solido, but upon plaintiff's objection it discontinued its demands against plaintiff individually, and for this reason plaintiff contends that no attorneys' fees should be allowed intervener. It was plaintiff's contention that intervener was relegated to an action against the insurance company for the collection of its debt, and the insurance company made no objection. The district judge, in a written opinion said:

"The intervener had a right to collect out of this policy the amount of its debt and the attorneys' fees as a contractual obligation, and the attorneys' fees are just as much a part of the debt as is the interest itself and secured by the mortgage just the same as the principal of the debt and interest."

We think the ruling is correct.

The intervener claimed also that it was entitled to a pro rata division of the penalties assessed against the insurance company under Act 59 of Acts Extra Sess., 1921. The trial judge in his written opinion said:

"For all practical purposes he (the intervener) is an assured just the same, up to the extent of his interest, as the owner of the property. * * * On this score we think that the proper method would be to prorate the twenty-five per cent penalty between the plaintiff and the intervener in proportion to their recovery."

We do not sanction this holding. The penalties were due the assured. The policy was held by the intervener as a mortgage creditor of plaintiff under a stipulation that in case of loss the proceeds should be paid to it as its interest might appear. The extent of its interest was the amount of its debt with interest and attorneys' fees. Beyond that it had no claim on the policy or its proceeds. The fact that it held the policy under such conditions did not make it an assured. It had an interest in the policy but was not the owner of the property covered by the insurance.

The court cited the case of Tilley v. Camden Fire Ins. Ass'n, 139 La. 985, 72 So. 709, as authority for its holding. In that case the mortgagee and holder of the policy was permitted to collect the penalties.

But that case is readily distinguishable from the one at bar. There, a fire policy was issued on a building belonging to Stinson, but mortgaged to Dr. Tilley, to whom the policy was delivered under a loss payable clause making the proceeds payable to him "as his interest appears." The amount of Dr. Tilley's mortgage exceeded the value of

the property destroyed, so that the proceeds of the policy were not sufficient to pay his debt. Dr. Tilley was entitled to collect his debt out of the proceeds of the policy, and as the penalties due by the company to the assured, Stinson, constituted a debt due him by the insurer, and as Dr. Tilley was entitled under the assignment of the policy to him by the assured to collect the full amount of his debt, he was allowed to collect the penalty. Furthermore, Stinson, the assured, was a resident of Arkansas and the property destroyed was in Louisiana, where Dr. Tilley lived, and as a matter of convenience, Stinson gave Dr. Tilley a power of attorney to represent him in the settlement. Dr. Tilley acted all through as the agent of the assured and brought the suit in his own name.

It is not disputed that under Act 59 of Acts Extra Sess. 1921, the penalty inflicted upon the insurance company for its failure to pay belongs to the assured. But it was held by the lower court that inasmuch as the Commercial Credit Company held the policy to protect its mortgage on the automobile, it was "to all practical purposes" an assured. It was held, however, in the case of Monroe Building & Loan Association v. Liverpool & L. & G. Ins. Co., 50 La. Ann. 1243, 24 So. 238, that the relation between the insurer and the insured was not changed or affected by the loss payable clause in favor of a mortgage creditor.

For the reasons assigned it is therefore ordered and decreed that the judgment appealed from in favor of the plaintiff J. B. Hardy and against the defendant insurance company be affirmed; and that the judgment in favor of the intervener against the insurance company be amended by striking therefrom the last clause thereof, reading as follows: "Plus twenty-five per cent of

said amount, principal, interest and attorneys' fees, as statutory penalty," and that in all other respects the judgment be affirmed.