235 So.2d 593 (1970)
Charles F. POWELL
v.
MOTORS INSURANCE CORPORATION.
No. 7902.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
*594 John R. Tharp, W. G. Randolph, of Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellant.
David L. Dawson, Jr., of D'Amico, Curet & Bush, Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and PICKETT, JJ.
LOTTINGER, Judge.
This is a suit by Charles F. Powell, as petitioner, against Motors Insurance Corporation, as defendant, to recover for loss of his automobile by fire under the terms of his comprehensive insurance policy issued by the defendant. General Motors Acceptance Corporation, hereafter referred to as GMAC, intervened requesting payment of the proceeds of the insurance policy to itself plus penalties and attorney fees on the grounds that the policy of insurance issued to the petitioner contained a loss payable clause to intervenor. The Lower Court awarded judgment in favor of petitioner and against defendant in the sum of $1,415.22, and dismissed the intervention filed by GMAC. GMAC has taken a suspensive appeal.
The parties to the accident have stipulated that, at the time of the fire, the value of the car was in the sum of $1500.00. The policy of comprehensive insurance issued on the automobile contained a $50.00 deductible provision. Subsequent to the fire to the automobile GMAC brought executory proceedings against petitioner on a chattel mortgage and vendor's privilege which it held against the automobile, and the vehicle was seized and sold by the Sheriff, without appraisal, for the price and sum of $34.78. The sum of the judgment rendered by the Lower Court, of course, was in the sum of the stipulated value, i. e., $1500.00, less the $50.00 deductible and the $34.78 sum realized from the Sheriff's Sale.
There is no question before the Court relative to the facts, the only question before this Court is whether or not the GM AC has any right to the proceeds of the policy of insurance, and, if so, in what amount. It is contended by petitioner that the intervenor has lost any right to the proceeds by virtue of its sale of the mortgage property by executory proceedings without appraisal.
In support of its contentions, the petitioner cites LSA-R.S. 13:4106, which provides as follows:
"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
"If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisment shall not prevent the endorsement of the mortgage or pledge in rem against any other property affected thereby."
LSA-R.S. 13:4107 further provides as follows:
"R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934."
*595 In Simmons v. Clark, 64 So.2d 520, this Court was faced with a situation which was in certain respects similar to the one now before it. In that case, Holmes and his wife executed a conventional mortgage in favor of petitioner, containing the usual and customary security clauses, including the waiver of appraisal. As security for this loan, a collateral mortgage was executed by the defendants in the suit on certain real property. Subsequently the petitioner foreclosed against the conventional mortgage via executory process, and the property subject to the mortgage was sold at Sheriff's Sale without appraisal. The petitioner then instituted suit against the defendants on the collateral mortgage for the unpaid balance of the Holmes' note. Exceptions were filed by the defendants which exceptions were maintained by the Court.
In that case, after citing Home Finance Service v. Walmsley, 176 So. 415 and Southland Investment Company, Inc. v. Lofton, 194 So. 125, we said:
"There is no question that, under the Deficiency Judgment Act, the fact that the Holmes' note and mortgage was foreclosed and the property sold without the benefit of appraisement, any deficiency remaining would be lost to the mortgagee and he would have no further remedy against the mortgagor for a deficiency judgment. Defendants claim that, as petitioner had no further remedy against Holmes, that he would have no cause or right of action against the defendants, as their mortgage was merely a collateral mortgage given as security for the primary obligation, the Holmes mortgage and note.
* * * * * *
"The law clearly states that it is against public policy to attempt to secure a deficiency judgment when the judicial sale, made without the benefit of appraisement, failed to bring in sufficient proceeds to discharge the indebtedness. Under the laws of suretyship, the surety here may interpose the same defense which is available to the principal debtor, as there are no personal defenses present."
Furthermore, under the provisions of Louisiana Code of Civil Procedure, Article 2771:
"The creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provision of Article 2723." (Emphasis ours)
We fully realized that the situation now before us is dissimilar to that of the Simmons case in that, instead of being concerned with a suretyship relationship, we are here concerned with the proceeds of an insurance policy. We do not believe, however, that the payee designated in the loss payable clause would have any greater right to collect from its debtor's insurer than it would have against its debtor. The right to collect from the insurer under the loss payable clause is derived from the debtor and once his obligation is extinguished the right to collect under the loss payable clause is likewise extinguished.
Appellant has cited Guinn v. Houston Fire & Casualty Ins. Co., 32 So.2d 613 as controlling to the situation presented in the instant case. We have read the cited case and must come to the conclusion that the said case is not applicable because the facts are entirely different. The facts in the cited case are that the plaintiff sold property to C. Bailey Behrnes for a certain consideration whereby the said Behrnes executed certain mortgage notes totaling $15,408.00 and assumed the payment of a first mortgage note in the amount of $2592.00 held by Mrs. Leslie M. Pecue. The defendant Houston Fire carried a fire insurance policy in the amount of $2000.00. The building was destroyed by fire and notwithstanding the fact that there *596 was a loss payable clause in favor of the first and second mortgagees as their interest may appear, the insurance company, in settlement of the loss, issued its draft to the joint order of Mr. & Mrs. C. Bailey Behrnes, the owner, Leslie Pecue, the first mortgagee and totally ignoring Mrs. Isabelle Guinn, the second mortgagee and plaintiff herein. Defendant contended that because they had issued its draft for the full amount of the policy and in further view of the fact that the plaintiff had foreclosed on the property and had same sold without appraisement, even though the proceeds of the sale were insufficient to pay the mortgages in full, that the indebtedness on the property was fully satisfied. This court held that the defendant insurance company had failed in its obligation to Mrs. Guinn as the other party it had contracted with under the mortgage clause in the policy and awarded her judgment. This court held that this public policy law was enacted for the benefit and protection of the mortgage debtor and would not allow this insurance company to take advantage of this public policy law to cover one of its mistakes. Furthermore the court said, "The mortgage debtor in this case is not seeking any benefit or protection under the act. In fact he ought to be well satisfied in the way things turned out as he undoubtedly received $2,000 which he was not entitled to when the insurance company issued its draft in his favor along with the first mortgage creditor who waived his right also in his favor."
It is clear that, under the law and jurisprudence of this State, GMAC lost its right to file suit for a deficiency judgment against the petitioner when the mortgaged property was sold without appraisal. We find no difference between the right attempted to be asserted here by way of third party proceedings and a suit by GMAC against petitioner for a deficiency judgment. The proceeds are the property of the petitioner and, under the public policy of this State, the creditor of petitioner has no right to now assert its claim for a deficiency.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by the third party petitioner.
Judgment affirmed.
BLANCHE, Judge (dissenting).
The majority is correct in holding that after GMAC elected to seize the automobile and have it sold without appraisement that the Deficiency Judgment Act relied upon by plaintiff-debtor could have been invoked to prevent GMAC from further proceeding against the debtor or any other of his property because the debt was discharged insofar as it constituted a personal obligation of the debtor. However, the majority is in error in awarding the proceeds of the insurance policy to appellant because GMAC is not proceeding against Powell or any of his property. It is suing for the proceeds of an insurance policy which was payable to it under the provisions of the loss payable clause of said policy. The intervention put at issue this entitlement to the proceeds of the policy over plaintiff-appellee, but it is not a proceeding as such against the debtor or any of his property.
In principle this writer is unable to distinguish the case of Guinn v. Houston Fire & Casualty Insurance Co., 32 So.2d 613 (La.App. 1st Cir. 1947) from the present case. In Guinn a similar loss payable clause was involved, and the second mortgagee instituted a foreclosure suit against the mortgagor and sold the property without benefit of appraisement and, accordingly, lost its right to a deficiency judgment against the mortgage debtor. When the mortgage debtor in that case, as here, argued that the property having been sold at foreclosure without benefit of appraisement that the indebtedness had been wiped *597 out under the provisions of the Deficiency Judgment Act, the Court answered:
"* * * We are unable to read in that act anything which supports counsel in their contention. That act as stated by the Supreme Court in the case of Southland Investment Co. v. Motor Sales Co. et al., 198 La. 1028, 5 So.2d 324, 325, `declared as a public policy of this state that "where any mortgage or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether the same be real or personal, or of both character; and the proceeds of such sale are insufficient to satisfy the debt for which said property is sold, said debt shall nevertheless stand fully satisfied and discharged, and such mortgage or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in no manner whatsoever." Section 1. Unquestionably this act was enacted for the benefit and protection of the mortgage debtor * * *.' (Our italics.) The mortgage debtor in this case is not seeking any benefit or protection under the act." (Guinn v. Houston Fire & Casualty Insurance Co., 32 So.2d 613, 615, 616)
Neither is the mortgage debtor in this case seeking any benefit or protection under the Act. He is seeking recovery of the proceeds from an insurance policy and has interposed the provisions of the Deficiency Judgment Act as a bar to the intervenor's right of recovery, not as against him but as against the insurer.
The majority makes a misapplication of the Deficiency Judgment Act to this case. GMAC is not seeking recovery against the debtor or his property. It is seeking recovery on the personal obligation of the insurance company under the loss payable clause. This binding obligation on the part of the insurance company became operative when the loss occurred, notwithstanding any subsequent foreclosure.
In short, the Deficiency Judgment Act could not effect the loss payees' rights to recover under the insurance policy. It is a completely independent cause of action to which the Deficiency Judgment Act has no application.
For the above and foregoing reasons, I respectfully dissent.