456 So.2d 599 (1984)
Albert RUSHING
v.
DAIRYLAND INSURANCE COMPANY.
No. 84-C-0601.
Supreme Court of Louisiana.
September 10, 1984.
*600 E. Wade Shows, Timothy M. Screen, Shows & Clegg, Baton Rouge, for intervenor-applicant.
James E. Kuhn, Fayard, Morrison & Kuhn, Denham Springs, for plaintiff-respondent.
Joseph G. Simmons, Owen, Richardson, Taylor, Matthews & Atkinson, Baton Rouge, for defendant-respondent.
MARCUS, Justice.
The issue on appeal is whether a mortgagee who has provoked a sale without appraisal of the mortgaged property may recover as a loss payee under its debtor's insurance policy.
On April 8, 1980, Albert Rushing purchased a used pickup truck from Supreme Ford, Inc. for $4,195. The credit portion of the purchase price was represented by a promissory note and secured by a chattel mortgage on the truck. Rushing obtained insurance through Dairyland Insurance Company and, pursuant to the purchase agreement, had Ford Motor Credit Company (assignee of the contract from Supreme Ford) named as loss payee under the collision and comprehensive sections of the policy. On January 13, 1982, the truck was involved in an accident and rendered a total loss. Shortly thereafter, Rushing filed suit against Dairyland for the property damage to his truck. While this action was pending, Ford instituted executory proceedings and had the wrecked truck sold at public auction without appraisal. Ford purchased the property at the sale for $414.60, the costs of the sale. Alleging an outstanding balance on the mortgage debt of $3,109.98, Ford intervened in Rushing's suit against Dairyland to recover the insurance proceeds as a loss payee under the insurance policy.
The trial judge rendered judgment in favor of Rushing and against Dairyland for $4,000, the amount of the loss, together with $1,000 as attorney fees. Ford's intervention was dismissed. The court of appeal amended the judgment to $3,490, reversed the award of attorney fees and affirmed the dismissal of the intervention.[1] Because of a conflict in the circuits over whether a mortgagee in the circumstances presented may recover under a loss payable clause,[2] we granted Ford's application for writs to review the correctness of the dismissal of its intervention.[3]
The Deficiency Judgment Act, La. R.S. 13:4106, provides in pertinent part:
If a mortgagee or other creditor takes advantage of a waiver of appraisement... and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency....
It is undisputed that Ford took advantage of Rushing's waiver of appraisal and sold the mortgaged property, the wrecked truck, without appraisal. Therefore, under the Deficiency Judgment Act, the mortgage debt Rushing owed Ford stood "fully satisfied and discharged." By operation of law, the mortgage debt was extinguished.
It has been alleged that because the debt is discharged "insofar as it constitutes a personal obligation of the debtor," there is a legislative intent to allow an action *601 such as this one in which the suit is not directly against the debtor. We perceive no such intent from the quoted provision. This limitation was added to the Deficiency Judgment Act in 1952 as part of an amendment[4] which provided that if a mortgage affects two or more properties and there is a sale without appraisal of one of the properties, an in rem mortgage subsists against the remaining properties.[5] The quoted language was appended to ensure consistency within the Act. Hence, it is inapplicable to the present situation where only one property is affected by the chattel mortgage. Therefore, the Deficiency Judgment Act is not merely a procedural bar to recovery of the debt from Rushing, it effected a full and final discharge of the obligation.
The question remains, however, of the effect of an extinguishment of the mortgage debt on the mortgagee's rights as a loss payee. Ford's rights arise under the loss payable clause of Rushing's insurance policy with Dairyland, which provides: "Should you [Rushing] have a loss that is covered by the comprehensive or collision sections of this policy, we pay you and the following: Ford Motor Credit." This is an open or simple loss payable clause as distinguished from a standard or union clause. The simple clause merely provides in effect that the proceeds of the policy shall be paid first to the mortgagee to the extent of his interest; the standard or union clause is somewhat more specific in that it also provides that the mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner. May v. Market Insurance Co., 387 So.2d 1081 (La.1980); Couch on Insurance § 42:682 (2d rev. ed. 1982).
A simple loss payable clause such as the one in the instant case is no more than a provisional appointment by the debtor of the one to whom the proceeds of the policy shall be paid to the extent of that person's interest. Its purpose is to protect the mortgagee's interest, which is the balance of the mortgage debt. The interest that is insured, however, is the debtor's interest in the mortgaged property. Accordingly, when an insured loss occurs, the insurer is liable for the value of the loss to the extent of the policy limits and must direct payment to the loss payee up to the balance of the mortgage debt. Therefore, if the mortgage debt no longer exists, the loss payee is not entitled to any of the proceeds. See Bankston v. Commercial Credit Corp., 86 So.2d 245 (La.App. 1st Cir.1956). According to Couch on Insurance, supra § 42:695:
[W]hen the mortgage debt is extinguished in any manner it necessarily follows that the mortgagee is not entitled to any proceeds of insurance under the loss-payable clause.... [The clause acts only as] a provisional assignment of the contingent proceeds of the contract, and does not substitute the mortgagee for the mortgagor as the insured party, so that the mortgagee's interest under the policy only extends to a security for his debt, and such interest ceases when the debt is extinguished.
Similarly, according to Appleman, Insurance Law and Practice § 3403 (1970):
[T]he full or partial extinguishment of the mortgage debt itself, whether prior to or subsequent to the loss, will preclude, to the extent thereof, any recovery on the policy by the mortgagee.
Hence, since the mortgage debt owed Ford by Rushing was extinguished by operation of the Deficiency Judgment Act, Ford's rights to the proceeds under the loss payable clause terminated.
*602 Moreover, we reject Ford's contention that its intervention is permitted by the Deficiency Judgment Act because its action is not against "the debtor or his property." While the intervention against Dairyland is not against the debtor, it is against the debtor's property. In In re Clover Ridge Planting & Manufacturing Co., 178 La. 302, 151 So. 212 (1933) (on rehearing), this court held that the proceeds of a fire insurance policy were owned by the debtor and were not assets of the mortgagee-loss payee. Hence, Ford is proceeding against its debtor's property contrary to the Deficiency Judgment Act.
Furthermore, we find no merit in Ford's alternative contention that its interest under the loss payable clause is a separate and independent contractual right that became vested at the time of the accident and is not affected by the existence or fluctuation of the mortgage debt after that time. Under a simple loss payable clause, such as the one in the instant case, the mortgagee-loss payee does not have a separate and independent contractual right. The simple clause "merely makes the mortgagee an appointee, whereas the standard mortgage clause operates as a distinct and separate contract." Couch on Insurance, supra § 42:683. See Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500 (1932); Hardy v. Commercial Standard Insurance Co., 172 La. 500, 134 So. 407 (1931). Moreover, even if there was a vested contractual right to recovery, this right was lost by the mortgagee's own actions in causing the debt to become extinguished by provoking a sale without appraisal.
Our holding is consistent with the debtor protection policy promoted by the Deficiency Judgment Act. In situations involving a mortgagee-loss payee, a sale without appraisal will often result in the debtor being harmed by receiving a smaller portion of the insurance proceeds being divided between him and the mortgagee-loss payee than if the sale was with appraisal. Further recovery by the creditor would be contrary to the spirit of the Act despite the inequities that may result in a particular case.
Accordingly, the court of appeal correctly affirmed the dismissal of Ford's intervention.

DECREE
For the reasons assigned, the judgment of the court of appeal is affirmed.
NOTES
[1] 449 So.2d 511 (La.App. 1st Cir.1984).
[2] Compare American Bank & Trust Co. v. Byron, 347 So.2d 850 (La.App. 2d Cir.), application not considered, 350 So.2d 676 (La.), writ denied, 351 So.2d 155 (La.1977) with Powell v. Motors Insurance Corp., 235 So.2d 593 (La.App. 1st Cir.1970).
[3] 450 So.2d 660 (La.1984).
[4] 1952 Acts, No. 20, § 1.
[5] The Deficiency Judgment Act as amended in 1952 was reworded by 1960 Acts, No. 32, § 1. The substance of the 1952 amendment was retained and now provides that if there is a sale without appraisal, the debt shall stand fully satisfied and discharged

insofar as it constitutes a personal obligation of the debtor....
If a mortgage or pledge affects two or more properties, ... the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby.