517 So.2d 201 (1987)
FEDERAL NATIONAL MORTGAGE ASSOCIATION
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.
No. 86 CA 1299.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
*202 Michael H. Rubin, Baton Rouge, and William L. Downing, Baton Rouge, for plaintiff-appellant Federal Nat. Mortg. Ass'n.
John A. Stewart, New Orleans, for defendant-appellee Prudential Property and Cas. Ins. Co.
William Morvant & E. Wade Shows, Baton Rouge, for intervenor-appellee Terry Gaughf and Gloria Gaughf.
Before COVINGTON, C.J., and SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
This action concerns entitlement to insurance proceeds as between mortgagors and a mortgagee. The mortgagee, Federal National Mortgage Association (hereinafter Federal), filed suit against Prudential Property and Casualty Insurance Company, seeking to obtain the proceeds of a homeowner's insurance policy. The mortgagors, Terry Lane Gaughf and Gloria Burch Gaughf (hereinafter the Gaughfs), intervened, claiming that they were entitled to those proceeds. The insurance carrier, Prudential Property and Casualty Insurance Company (hereinafter Prudential), deposited the sum in controversy in the registry of the court, admitting it was due to either Federal or the Gaughfs.
Motions for summary judgment were filed by Federal and the Gaughfs. The trial court granted a summary judgment in favor of the Gaughfs, and Federal now appeals.
Terry Lane Gaughf and Gloria Burch Gaughf purchased the western portion of Lot "F", West Harding Heights Subdivision, Baton Rouge, on March 26, 1975, and executed a promissory note secured by a mortgage, which note was subsequently purchased by Federal. The Gaughfs fell into arrears in their payments under the note. On February 1, 1983, Federal filed suit by executory process against the Gaughfs, seeking a writ of seizure and sale, and requesting that the sale be made without appraisement. The lot and house built on the mortgaged property were seized by the sheriff.
On February 25, 1983, the Gaughfs' home sustained serious fire damage. Federal was notified of the fire damage, but proceeded with the sheriff's sale on March 30, 1983 without appraisement. Federal purchased the property at the sale for the costs of the sale.
Federal now claims the insurance proceeds resulting from the fire under the loss payable clause; the Gaughfs also claim the insurance proceeds, contending that the Deficiency Judgment Act (LSA-R.S. 13:4106 et seq.) destroys whatever right the noteholder, Federal, may have had to the insurance proceeds, as the sheriff's sale was made without appraisement.
Both Federal and the Gaughfs filed motions for summary judgment. On September *203 12, 1983, Judge Lewis Doherty granted a motion for summary judgment in favor of Federal, entitling Federal to the insurance proceeds. The Gaughfs appealed, and this court vacated the judgment of the trial court and remanded the case. Federal National Mortgage Association v. Prudential Property and Casualty Insurance Co., 460 So.2d 45 (La.App. 1st Cir.1984). The case was remanded for the introduction of the homeowner's policy as well as for reconsideration in light of the Louisiana Supreme Court's decision in Rushing v. Dairyland Insurance Company, 456 So.2d 599 (La.1984).[1] Both parties again moved for summary judgment. On July 22, 1986, judgment was signed granting the summary judgment in favor of the Gaughfs.[2]
Federal urges four assignments of error, which are as follows:
1. the trial court erred in granting summary judgment to the Gaughfs and denying summary judgment to Federal.
2. the trial court erred in holding that a sale without appraisement cuts off a mortgage holder's rights as a loss payee under a "standard" or "union" insurance clause.
3. the trial court erred in failing to find that the insurance policy was pledged to Federal and that a sale by executory process without appraisal does not cut off a creditor's right to pursue the pledge, in rem.
4. the trial court erred in failing to hold that the Gaughfs, as owners, were barred from collecting the insurance proceeds once foreclosure proceedings had begun.
Federal contends that it is entitled to the insurance proceeds through the insurance contract, and that the Louisiana Deficiency Judgment Act (LDJA) and the Rushing case do not bar it from obtaining the funds. The Gaughfs contend that Federal's action in foreclosing without appraisal destroys any right it had to the insurance proceeds, based upon the LDJA and the Rushing case.
LDJA, LSA-R.S. 13:4106, provides:

*204 If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby.
Under the LDJA, because Federal sold the Gaughfs' home without appraisal, the mortgage debt the Gaughfs owed Federal was "fully satisfied and discharged." According to University Properties Corp. v. Fidelity National Bank of Baton Rouge, 500 So.2d 888 (La.App. 1st Cir.1986), writ denied, 501 So.2d 762 (La.1987), "[f]ailure to comply with the LDJA effects a full and final discharge (extinguishment) of the debt obligation to which it applies," citing the Rushing case.
The Rushing case concerned a simple loss payable clause; the case before us involves a standard or union clause.[3] We initially remanded this case for the trial court to determine if the rationale in Rushing should apply with a standard loss payee clause. Federal contends Rushing does not control where the mortgagee is a loss payee under the standard clause.
In Bohn v. Louisiana Farm Bureau Mutual Insurance Co., 482 So.2d 843 (La. App. 2nd Cir.), writ denied, 486 So.2d 750, *205 751, 752 (La.1986), the Second Circuit held that a mortgagee who foreclosed without appraisal had no right to insurance proceeds on the mortgaged property under a standard or union loss payee clause. The Bohn court set forth in more detail the characteristics of a standard or union clause, citing the case of May v. Market Insurance Co., 387 So.2d 1081 (La.1980) (mortgagee loss payee under a standard clause was an "insured" under LSA-R.S. 22:658 for collection of penalties and attorney's fees):
Concerning the effect of the standard mortgage clause, Couch, supra § 42:694 [Couch on Insurance § 42:694 (2d ed. 1963)] provides:
Under the standard or union mortgage clause, an independent or separate contract or undertaking exists between the mortgagee and the insurer, which contract is measured by the terms of the mortgage clause itself. There are accordingly in substance two contracts of insurance, the one with the mortgagee, and the other with the mortgagor.
The mortgagee does not have the status of a beneficiary, and the effect is the same as though the mortgagee had procured a separate policy naming himself as the insured.
The consideration for the insurer's undertaking with respect to the mortgagee under the standard clause is the consideration for which the policy was itself issued to the mortgagor, and a standard mortgage clause creates a separate contract between the insurer and the mortgagee, and is enforceable by the mortgagee, even though it is merely engrafted onto the policy delivered to the mortgagor. [Footnotes omitted.]
The jurisprudence of this state is in accord with the view that a standard mortgage clause creates a separate contract of insurance between the insurer and the mortgagee. [Footnote omitted.] Bohn, 482 So.2d at 850.
The court reasoned that although a standard or union clause does create a separate contractual obligation between the insurance company and the mortgagee, the mortgagee loses its rights when it forecloses without appraisal. The court explained:
[W]hen the mortgagee forecloses on the debtor's property without benefit of appraisal, the debt is extinguished insofar as it exists as a personal obligation of the debtor under the Deficiency Judgment Act. Therefore, the mortgagee's interest in the proceeds, which is the balance of the mortgage debt, is likewise reduced to zero. At that point, the entire fund representing the insurance proceeds is the property of the insured. Thus, an action by the mortgagee for recovery of the insurance proceeds subsequent to a foreclosure without benefit of appraisal is an action against property of the mortgage debtor, and is consequently precluded by the Deficiency Judgment Act. Bohn, 482 So.2d at 851. (Footnote omitted.)
With both the simple and standard loss payable clauses, the interest that the mortgagee seeks to protect is the balance of the mortgage debt. When the mortgage debt is extinguished by the mortgagee's action in foreclosing without appraisal, the mortgagee's interest ceases. The main distinction between the two clauses is that under a simple clause, the insured interest is the debtor's interest in the mortgaged property; thus, any action of the debtor which precludes him from recovering under the insurance policy also precludes the mortgagee from recovery. Under a standard clause, the mortgagee insures his own interest (the balance of the debt) such that actions of the debtor do not bar him from recovery. However, the mortgagee is not protected from his own action in foreclosing without appraisal: the result of such action is that the mortgage debt is extinguished as to the mortgagor and his property. Had the mortgagee sold the property with appraisal, he would have preserved the obligation of the debtor as well as his right to the proceeds from the insurance policy to the extent of the balance due on the mortgage debt.
*206 With either the simple or standard loss payable clauses, the right of the mortgagee to a certain amount of the insurance proceeds is not established at the time of loss; it is affected by any subsequent changes in the mortgage balance. Bohn, 482 So.2d at 852. In Rushing, the mortgagee contended that its interest in the insurance proceeds was a separate and independent contractual right which vested at the time of the loss, and could not be affected by any change in the balance of the mortgage debt. The supreme court rejected this contention, reasoning:
Under a simple loss payable clause, such as the one in the instant case, the mortgagee-loss payee does not have a separate and independent contractual right. The simple clause `merely makes the mortgagee an appointee, whereas the standard mortgage clause operates as a distinct and separate contract.' Couch on Insurance, supra § 42:683. See Officer v. American Eagle Fire Insurance Co., 175 La. 581, 143 So. 500 (1932); Hardy v. Commercial Standard Insurance Co., 172 La. 500, 134 So. 407 (1931). Moreover, even if there was a vested contractual right to recovery, this right was lost by the mortgagee's own actions in causing the debt to become extinguished by provoking a sale without appraisal. Rushing, 456 So.2d at 602. (Emphasis ours.)
We note that the supreme court granted writs in Rushing because there was a conflict in the circuits over whether a mortgagee could recover under a loss payable clause following foreclosure without appraisal. The two cases cited as conflicting were American Bank & Trust Co. v. Byron, 347 So.2d 850 (La.App. 2nd Cir.), application not considered, 350 So.2d 676 (La.), writ denied, 351 So.2d 155 (La.1977), and Powell v. Motors Insurance Corp., 235 So.2d 593 (La.App. 1st Cir.1970). In American Bank, the Second Circuit affirmed the trial court's finding that a mortgagee's right to insurance proceeds vested at the time the loss occurred and was not affected by the subsequent sale of the property without appraisement. In Powell, a mortgagee intervened in the mortgagor's suit against the insurer of the mortgaged property; the mortgagee had caused the property to be sold by executory process without appraisal after the property had been damaged by fire. This court dismissed the mortgagee's intervention, stating:
It is clear that, under the law and jurisprudence of this State, GMAC [mortgagee-creditor] lost its right to file suit for a deficiency judgment against the petitioner [mortgagor-debtor] when the mortgaged property was sold without appraisal. We find no difference between the right attempted to be asserted here by way of third party proceedings and a suit by GMAC against petitioner for a deficiency judgment. The proceeds are the property of the petitioner and, under the public policy of this State, the creditor of petitioner has no right to now assert its claim for a deficiency. Powell, 235 So.2d at 596.
The supreme court's statements in Rushing concerning the effect of fluctuation in the balance owing on the mortgage debt due to foreclosure without appraisal show an intention to follow the result reached in Powell as opposed to that reached in American Bank. Thus, we find in this case that while Federal had a right to the insurance proceeds at the time of the fire damage to the extent of the balance due on the mortgage debt, Federal lost that right when it foreclosed on the Gaughfs' home without appraisal. The foreclosure without appraisal extinguished any obligation of the Gaughfs under LDJA. Thus, Federal's interest, which was the balance of the mortgage debt, was reduced to zero.
Once this occurs, the mortgagors, the Gaughfs, are entitled to all the insurance proceeds. In Rushing, the court held that the insurance proceeds were owned by the debtor, and were not assets of the mortgagee-loss payee. Rushing, 456 So.2d at 602. Likewise, the Bohn court also found that the insurance proceeds were property of the mortgagor-debtor. Bohn, 482 So.2d at 851. Reliance was placed on two earlier cases, Bankston v. Commercial Credit Corp., 86 So.2d 245 (La.App. 1st Cir.1956) and In re Clover Ridge Planting & Manufacturing *207 Co., 178 La. 302, 151 So. 212 (1933) (on rehearing).
Federal contends that while any obligation of the mortgagor to the mortgagee is extinguished, the debt still exists; for this reason, it argues it is entitled to collect the balance due on the debt from the insurer. To support its argument, Federal cites cases where a creditor was allowed to proceed against the mortgaged property, although the creditor could not enforce the principal obligation against the debtor. See W.K. Investment Co. v. Tyler, 303 So.2d 777 (La.App. 1st Cir.1974), writ refused, 305 So.2d 543 (La.1975); Ferguson v. Porter, 359 So.2d 676 (La.App. 1st Cir. 1978) (creditor not entitled to proceed against debtors discharged in bankruptcy, but can proceed as to property mortgaged to secure indebtedness; discharge in bankruptcy releases bankrupt's personal liability or indebtedness but the mortgage remains intact); La. Nat. Bank of Baton Rouge v. O'Brien, 439 So.2d 552 (La.App. 1st Cir.), writ denied, 443 So.2d 590 (La. 1983) (bankruptcy of debtor does not cut off rights of creditor to enforce pledge although creditor can not proceed against debtor).
We reject Federal's contention. While this action is not directly against the Gaughfs, it is against insurance proceeds which are property of the Gaughfs. Furthermore, in Rushing, the mortgagee contended that LDJA did not bar an action by the mortgagee to recoup the balance of the debt where the action was not directly against the debtor. According to the supreme court, the language in LDJA "[T]he debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor... "does not mean that LDJA allows an action which is not directly against the debtor. The court explained as follows:
This limitation was added to the Deficiency Judgment Act in 1952 as part of an amendment which provided that if a mortgage affects two or more properties and there is a sale without appraisal of one of the properties, an in rem mortgage subsists against the remaining properties. The quoted language was appended to ensure consistency within the Act. Hence, it is inapplicable to the present situation where only one property is affected by the chattel mortgage. Therefore, the Deficiency Judgment Act is not merely a procedural bar to recovery of the debt from Rushing, it effected a full and final discharge of the obligation. Rushing, 456 So.2d at 600-601 (Footnote omitted.) (Emphasis ours.)
Federal also raises the argument that the insurance policy was pledged to secure the Gaughfs' debt, and that it can enforce its right as a pledgor as to the insurance proceeds under the following language of LDJA:
"If a mortgage or pledge affects two or more properties, ... the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby."
We agree with the Gaughfs' interpretation of this sentence. In this case, we have one piece of property affected by a mortgage, i.e., the house and lot. The mortgage does not cover the insurance policy; the insurance policy is not additional security for the debt. The insurance policy insures the only security for the debt. The language of LDJA deals with one mortgage affecting more than one piece of property or one pledge affecting more than one piece of property. Prudential's fire insurance policy is not a separate piece of property since its only subsistence is ancillary to the mortgaged property.
Finally, Federal contends that LDJA has been changed by enactments of the 1986 legislature, such that Rushing has been legislatively overruled. Act 489 of 1986 enacted LSA-R.S. 13:4108 of LDJA, which in pertinent part reads as follows:
Notwithstanding any other law to the contrary, including but not limited to R.S. 13:4106 and 4107, none of the following actions by a mortgagee or other creditor shall prohibit the mortgagee or other creditor from obtaining a deficiency judgment against any debtor, guarantor, *208 or surety, notwithstanding the fact that a sale of property or collateral may have occurred at a judicial sale without appraisal, or at a judicial sale with a defective appraisal:

* * * * * *
(6) Collection or receipt of insurance proceeds under a simple or standard loss-payee clause.
LSA-R.S. 13:4108 became effective on August 30, 1986. Federal argues that LSA-R.S. 13:4108(6) should apply to this case on the basis that the legislature was seeking to overrule Rushing and that LSA-R.S. 13:4108(6) represents the law as it existed prior to Rushing. Federal fails to note that prior to Rushing, there were cases holding that a mortgagee's rights on a loss payee clause were extinguished by foreclosure without appraisal. See Powell, 235 So.2d 593 and Bankston, 86 So.2d 245. The issue of the retroactivity of LSA-R.S. 13:4108, also enacted by Act 489, was raised but not decided in the University Properties Corporation case. University Properties, see 500 So.2d at 905, 906.
The law does not state that it is to be retroactive. In Graham v. Sequoya Corporation, 478 So.2d 1223, 1225-1226 (La.1985), appears the following:
C.C. 8 states the general rule that a law `can prescribe only for the future, it can have no retrospective operation ...' Additionally, R.S. 1:2 mandates that no statute is retroactive unless expressly stated. From these principles it has developed and is consistently stated that the rule of prospective application applies to laws that are substantive in nature, but laws that are procedural, remedial or curative may be accorded retroactive effect... However, a law will not be applied retroactively if its language evidences a contrary intent or the retroactivity would operate to disturb vested rights. (Citations omitted.)
Based on these jurisprudential rules, we find that the LSA-R.S. 13:4108 can not be retroactively applied to this case, which arose prior to August 30, 1986.
Regardless of the fact that Federal had a contractual right under the standard mortgage clause contained in the insurance policy, pursuant to the express terms of LDJA and the holdings in Rushing and Bohn, we hold that Federal's action in foreclosing without benefit of appraisement caused it to lose any interest in the proceeds of the policy as the debt owed Federal stood fully satisfied and discharged and was extinguished by operation of law.
As the supreme court stated in Rushing:
Our holding is consistent with the debtor protection policy promoted by the Deficiency Judgment Act. In situations involving a mortgagee-loss payee, a sale without appraisal will often result in the debtor being harmed by receiving a smaller portion of the insurance proceeds being divided between him and the mortgagee-loss payee than if the sale was with appraisal. Further recovery by the creditor would be contrary to the spirit of the Act despite the inequities that may result in a particular case. Rushing, 456 So.2d at 602.
For these reasons, we affirm the judgment of the trial court in favor of the Gaughfs. Costs to be paid by appellant.
AFFIRMED.
NOTES
[1] In Rushing, the supreme court examined the effect of the extinguishment of the mortgagor's debt on the mortgagee's rights under a loss payable clause on the insurance covering the mortgaged property. The mortgagor filed suit against the insurer seeking recovery of insurance proceeds for property damage to his mortgaged truck. While that suit was pending, the mortgagee instituted executory proceedings and sold the truck without appraisal. The mortgagee purchased the truck for the costs of the sale. The mortgagee then intervened in the suit against the insurer alleging that it was entitled to recover the balance of the debt owed it, as a loss payee on the insurance policy. The supreme court affirmed this court's dismissal of the mortgagee's intervention.

Rushing involved an open or simple loss payee clause. The court, in its reasoning, set forth the difference between an open or simple loss payable clause and a standard or union clause.
The simple clause merely provides in effect that the proceeds of the policy shall be paid first to the mortgagee to the extent of his interest; the standard or union clause is somewhat more specific in that it also provides that the mortgagee shall be protected against loss for any act or neglect of the mortgagor or owner. May v. Market Insurance Co., 387 So.2d 1081 (La.1980); Couch on Insurance § 42:682 (2d rev. ed. 1982). Rushing, 456 So.2d at 601.
The court then reasoned that extinguishment of the mortgage debt by foreclosure without appraisal precludes any recovery by the mortgagee under the simple loss payee clause:
A simple loss payable clause such as the one in the instant case is no more than a provisional appointment by the debtor of the one to whom the proceeds of the policy shall be paid to the extent of that person's interest. Its purpose is to protect the mortgagee's interest, which is the balance of the mortgage debt. The interest that is insured, however, is the debtor's interest in the mortgaged property. Accordingly, when an insured loss occurs, the insurer is liable for the value of the loss to the extent of the policy limits and must direct payment to the loss payee up to the balance of the mortgage debt. Therefore, if the mortgage debt no longer exists, the loss payee is not entitled to any of the proceeds. See Bankston v. Commercial Credit Corp., 86 So.2d 245 (La.App. 1st Cir. 1956). Rushing, 456 So.2d at 601.
[2] There are no written reasons or transcribed oral reasons in the record. The minute entries show that on July 9, 1986, the motions were argued before the trial court and taken under advisement. The minute entry of July 22, 1986 shows that judgment was rendered on July 11, 1986, and signed on July 22, 1986.
[3] Pertinent parts of the loss payable clause are as follows:

1. Loss or damage, if any, under this policy, shall be paid to the Payee named on the first page of this policy, its successors and assigns, hereinafter referred to as `the Lender', in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.
2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether occurring before or after a loss, the attachment of this endorsement, or whether before or after which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.
* * * * * *
4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.
* * * * * *
8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.