JaLeBLANC, J.
This appeal is from the trial court’s judgment in favor of defendants, Assicurazioni Generad and Munster Insurance Agency, Inc., and against plaintiff, Alton Ducote, dismissing plaintiffs claims. After a thorough review and evaluation of this record, we are convinced that the decision of the trial court judge, supported by the written reasons he gave and which we attach, is correct.
Costs of this appeal are assessed against plaintiff, Alton Ducote.
AFFIRMED.
hAPPENDIX
ALTON DUCOTE VERSUS * DIVISION “B” NO. 27,991 * 18TH JUDICIAL DIST. COURT * PARISH OF POINTE COUPEE MUNSTER INSURANCE AGENCY, INC. AND ASSICURAZIONI GENERALI * STATE OF LOUISIANA
[[Image here]]

REASONS FOR JUDGMENT

This matter was taken under advisement after post-trial memoranda were submitted to the Court and all parties waived final arguments.

FACTS

On November 22, 1991, Assicurazioni Gen-erali (hereinafter “Generali”), through Crosby & Associates, Inc., issued one “Standard Fire Policy” with extended coverage affect-
ing one building located at 613 St. Augustine Street, New Roads, Louisiana. Horace Edwards was the owner of the building at that time. The policy listed Horace Edwards d/b/a Horace’s Corner as the insured. The policy mortgage clause listed Team Bank as first mortgagee and Billy Ducote as second mortgagee.
Plaintiff asserts the listing of Team Bank as mortgagee was in error. Plaintiff claims Team Bank had no mortgage interest on said *760 property and was merely acting as a collecting agent. Team Bank is not a party to this suit. There was no opposition to this assertion. Billy Ducote held a vendor’s mortgage on the property. Pursuant to his vendor’s mortgage, Ducote required Edwards to obtain insurance on the building. Edwards obtained the insurance through defendant, Munster Insurance Agency, Inc.
Plaintiff testified that in June of 1992, he brought suit against Edwards for failure to pay his debt on the property. Plaintiff further testified that the sheriff seized the property in July, 1992. Plaintiff asserted at his deposition and at trial that Horace’s Corner continued to operate after the seizure as a lounge, because Edwards was attempting to work out some arrangement for ^payment of his debt to plaintiff. Nevertheless, plaintiff testified that Horace’s Corner ceased business in late July, 1992. On August 19, 1992, plaintiff purchased the property at a foreclosure sale. On August 24, 1992, according to plaintiff’s testimony, the sheriffs deed was recorded.
On August 26,1992, the property was subject to windstorm damage due to Hurricane Andrew. The building roof and windows were damaged and the budding sustained water damage. On September 1,1992, plaintiff reported a claim from damages to Munster. (Exhibit D-5). There is a discrepancy in the testimony and exhibit records regarding the date plaintiff communicated a change in ownership of the property. Plaintiff testified that he communicated to Munster on August 24, 1992, the day before Hurricane Andrew struck the New Roads area, the change in ownership of the property subject to the sheriffs deed. However, Diane Wil-dey, an agent for Munster, testified that plaintiff did not communicate, by person or by telephone, the change in ownership on August 24, 1992. Furthermore, Munster’s daily status sheets do not indicate Munster received any messages from plaintiff on August 24, 1992. (Exhibit D-5). Wildey testified plaintiff informed Munster of the change in ownership of the property on September 1, 1992, the same date he reported a damage claim. Wildey’s testimony reflects Munster’s daily status sheets. (Exhibit D-5). The Court believes Mr. Ducote was in error on this point.
On September 3, 1992, Munster sent via facsimile an accord claim, representing plaintiffs damages, and information regarding the change in ownership to Crosby & Associates. (Exhibit D-5). On October 14,1992, plaintiff brought the sheriffs deed, indicating the change in ownership, to Munster. (Exhibit D-5). Plaintiff also had in his possession a proof of loss issued by Willis-Rollinson, Inc., and an appraisal issued by Lindsey Morden Claim Services, Inc. (Exhibit P-3). The proof of loss was not signed or notarized. Plaintiff testified that he did not fill out the proof of loss. The proof of loss indicated at the time of loss the insured and primary was Horace Edwards. The proof of loss also indicated ^mortgagees in the property as Team Bank and Billy Ducote.
In addition, plaintiff testified that he received a draft from Munster made payable to Edwards, Team Bank and plaintiff. Wildey testified that she never saw the draft. Munster’s daily status sheets indicate plaintiff asked Munster to request the insurance company re-issue a new draft in his name. (Exhibit D-5). The daily status sheets reflect Munster requested A1 Permenter, adjuster for Willis-Rollinson, Inc., re-issue a proof of loss and draft in the name of Billy Ducote. (Exhibit D-5). Mr. Permenter informed Munster that a written request was required in addition to a copy of the sheriffs deed. (Exhibit D-5). Munster followed through on those instructions. (Exhibit D-5).
On October 22, 1992, a notice of cancellation effective November 22, 1992 (the last day of the full term of the policy) was mailed to plaintiff. (Exhibit P-2). On October 23, 1992, Crosby & Associates sent Munster a letter indicating they would immediately issue a direct notice of cancellation on the policy. (Exhibit D-7). They indicated that a new policy must be issued because they could not endorse the policy to reflect the new owner’s name. After this facsimile was received by Munster, numerous phone conversations took place between Munster and A1 Permenter regarding information on this claim. On February 2, 1993, plaintiff sent a *761 demand letter to Crosby & Associates. The claim was never paid on the policy issued by defendants.

ISSUES AND THE LAW

A major issue in this matter is whether the Louisiana Deficiency Judgment Act (LDJA) bars plaintiff from receiving insurance proceeds. Generali contends that under the LDJA, because plaintiff foreclosed on Edwards’ property without appraisal, the underlying mortgage debt Edwards owed plaintiff was fully satisfied and discharged. Consequently, Generali argues that plaintiffs action in foreclosing without appraisal also terminated plaintiffs interest in the insurance proceeds.
Generali relies on Rushing and its progeny for the foregoing ^assertions. Rushing v. Dairyland Insurance Company, 456 So.2d 599 (La.1984), Bohn v. Louisiana Farm Bureau Mutual Insurance Co., 482 So.2d 843 (La.App. 2nd Cir.), writ denied, 486 So.2d 750, 751, 752 (La.1986), Fed. Nat. Mortg. v. Prudential Property, 517 So.2d 201 (La.App. 1st Cir.1987). Generali further contends that the aforementioned cases were not legislatively overruled or superseded by the enactment of LSA-R.S. 13:4108.1.
In Fed. Nat. Mortg. v. Prudential Property, 517 So.2d 201, 205 (La.App. 1st Cir.1987), the Court extended the Rushing rationale to the standard or union mortgage clause with the following finding:
With both the simple and standard loss payable clauses, the interest that the mortgagee seeks to protect is the balance of the mortgage debt. When the mortgage debt is extinguished by the mortgagee’s action in foreclosing without appraisal, the mortgagee’s interest ceases.
The Court went on to state:
Under a standard clause, the mortgagee insures his own interest (the balance of the debt) such that actions of the debtor do not bar him from recovery. However, the mortgagee is not protected from his own action in foreclosing without appraisal: the result of such action is that the mortgage debt is extinguished as to the mortgagor and his property. Had the mortgagee sold the property with appraisal, he would have preserved the obligation of the debtor as well as his right to the proceeds from the insurance policy to the extent of the balance due on the mortgage debt. Id.
Here in the case at bar, the facts are somewhat different in that the seizure and sale of the property occurred before the windstorm damage to the property.
In Fed. Nat. Mortg., the Court found “[w]ith either the simple or standard payable clauses, the right of the mortgagee to a certain amount of the insurance proceeds is not established at the time of the loss; it is affected by any subsequent changes in the mortgage balance.” Fed. Nat. Mortg. at 206, citing Bohn, 482 So.2d at 852. Here, because of the sale without appraisal, plaintiff lost any right to the insurance proceeds before the loss even occurred. At the time of loss, plaintiff was no longer the mortgagee and his insurable interest, the balance of the mortgage debt, no longer existed.
Plaintiff contends this result should be abrogated by the | .legislature’s enactment of LSA-R.S. 13:4108.1. However, Generali contends that LSA-R.S. 13:4108.1 did not supersede the LDJA but merely provided an exception whereby the creditor and debtor must have reached an express agreement as to the value to be attributed to the property sold at the sheriffs sale in order for the “commercial transaction” exception of LSA-R.S. 13:1408.1 to apply. (See LSA-R.S. 13:1408.1 B(2). In Atkinson v. Sumrall, 598 So.2d 1166, 1168 (La.App. 1st Cir.1992), the Court found that “when the creditor and debtor have reached an agreement as to the value to be attributed to the property,” the creditor in a commercial transaction may seek a deficiency judgment against a debtor even in the absence of judicial process. No such agreement existed in the case at bar.
Plaintiff argues that Atkinson did not involve a question of interest in insurance proceeds and therefore is inapplicable to the case at bar. The Court finds plaintiffs assertion without merit. The debtor protection policy of the LDJA would still be germane in a case which involved conflicting rights to insurance proceeds. However, plaintiff contends the public policy of protecting a debtor from an overreaching creditor is not relevant *762 in this matter. While that contention may be true here, plaintiff overlooks the fact that he lost any rights to the insurance proceeds when he foreclosed on the property without appraisal, before the loss ever occurred. Therefore, the Court finds plaintiffs insurable interest, the balance of the mortgage debt, no longer existed at the time of loss.
The Court need not address defendant’s assertions that plaintiff violated insurance policy conditions.
Counsel for the defendant will prepare judgment in accordance with the foregoing reasons.
New Roads, Louisiana, this 22nd day of November, 1994.
/s/ Ian W. Claiborne
IAN W. CLAIBORNE
Judge, 18th Judicial District Court